## O. W. ARNOLD v. T. J. HODGE ET AL.

Decided January 26, 1899.

**1. Limitations—Color of Title—Void Probate Sale.**

An order of the probate court approving the inventory and sale of the land of a decedent does not operate as a sale of the community interest of the latter's wife which descended to and vested in her children, and does not furnish color of title so as to support the statute of three years limitations.

**2. Wife's Title in Community Land—Legal or Equitable.**

The community interest of a wife in land conveyed to her deceased husband descends upon her death to her children, and, although an equitable title, will support an action of trespass to try title for the recovery thereof, to which only the statute of limitations, and not the plea of stale demand, will apply.

**3. Probate Sale—Presumption.**

It will be conclusively presumed from the order of confirmation of an administrator's sale that the sale was made in accordance with law.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Mann & Baker*, for appellants.

*Hume & Kleberg* and *D. R. Pearson*, for appellees.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought by the appellees as the heirs of Archibald Hodge and his wife, Lottie Hodge, against the appellant O. W. Arnold and others, for the recovery of a part of the headright league of land, granted to Archibald Hodge as a colonist, situated in Montgomery County, Texas. The case was tried before the court without a jury and resulted in a judgment in favor of the appellees for one-half of the land sued for. The defendant, Arnold, has appealed from the judgment against him, and both parties have assigned errors.

In the year 1831 the Mexican government granted to Archibald Hodge, as a colonist, a married man, and the head of a family, a league of land situated in Montgomery County, Texas, of which the land sued for is 3637 acres. Hodge and his wife continued to reside in Texas until the year 1841, when she died. At her death she left four children surviving her, to wit, Cynthia, Emily, Frenetta, and Abner, who, and the heirs of such of them as have died, are the plaintiffs in this suit. Cynthia afterwards married one Moffitt, and is a widow; Emily is the widow of Joseph Stansbury; Frenetta married Henry Dunlavy, and died, leaving the plaintiff, M. B. Dunlavy, as her sole heir. The other plaintiffs inherit from Abner, who died in the year 1860. Archibald Hodge, having survived his wife, married again twice, and afterwards died in the year 1864, leaving a will and a surviving wife. The land sued for was the community property of himself and his wife of the first marriage, Lottie, and was inventoried as part of his estate. There were no debts at the time of his death against the community of

himself and his wife, Lottie. Shortly before his death Archibald Hodge conveyed to his daughter, Cynthia Moffitt, 640 acres of the league granted to him. He had previously conveyed 200 acres thereof to William H. Battle by deed dated February 13, 1846, and 500 acres thereof to John W. Crump, by deed dated March 13, 1864. The date of the deed to Cynthia Moffitt was March 16, 1864; and recited as a consideration, natural love and affection. All of these deeds were duly acknowledged and recorded. The will made Joseph Stansbury and C. W. Buckley executors without bond and free of control of the probate court. The testator devised to his daughter Cynthia Moffitt certain negroes, which were valued in the inventory at $1450; to his daughter Emily Stansbury, negroes valued at $1950; and to his daughter Frenetta Dunlavy, mother of the plaintiff M. B. Dunlavy, negroes valued at $2060. There was a memorandum on the inventory made by C. W. Buckley, one of the independent executors, "that the 700-acre homestead tract was conveyed in 1859 to Abner Hodge as a gift, but as the testator devised part of the land in his will it is inventoried." By the will, which is dated February 21, 1864, the testator desired that the negroes be kept together until the crop of that year should be gathered, before the division to the legatees. He gave to his wife one-half of all personal property, except negroes, and for her lifetime certain negroes, named, and 200 acres of the homestead tract described by metes and bounds. The residue of his estate was to be divided among his daughters and the children of Abner. Archibald Hodge died owing some debts. The inventory of the estate, as returned by the executors, footed up $17,420.50, and showed thirteen negroes, 700 acres of land in Fort Bend County, the homestead tract valued at $4200, and "3722 acres of land in Montgomery County, Texas, being residue of headright of deceased valued at $3722." The probate records show that in July, 1868, C. H. Kendall was appointed administrator de bonis non of the estate. His inventory showed: 200 acres of land, $400; 15 head of cattle, $37.50; 3722 acres of land in Montgomery County, residue of the headright of deceased, valued at 20 cents an acre, $744.40. Kendall made an application for the sale of land to pay debts of the deceased, filed December 29, 1868. It recites that there are debts amounting to $502.33, besides costs and privileged claims; that there are no funds on hand, and nothing to make money except 200 acres of land in Fort Bend County. It does not mention the land in controversy. There is also among the papers of the estate a report of sale by the administrator, sworn to September 28, 1869. It reports the sale of the 3722 acres, residue of headright league of the deceased, to Nelson Dunlavy, at 11 cents per acre, made September 7, 1869. It recites that a previous sale of the land was made on the first Tuesday in February, 1869, to Thomas Fallon, but that he failed to comply with the terms of the sale. At the same term the court entered an order in said estate as follows:

"September 29, 1869.—On this day came on for consideration the re-

port of C. H. Kendall, administrator of said estate, of land by him sold as property of said estate, which land is described, to wit: situated in Montgomery County, containing 3722 acres and being the remainder of the headright league of Hodge, dec'd, and the court having made inquiry into the manner in which said sale was, and being satisfied that said sale was legally and fairly made according to law and the order of this court, and that said sale should be confirmed, therefore it is ordered by the court that said sale be and the same is hereby fully approved; and it is further ordered that C. H. Kendall, admr., as aforesaid, make and deliver to N. B. Dunlavy, the purchaser, a good and proper deed for the land sold."

The report of sale and the decree of confirmation both appear in the minutes of the court and in the final records of the estate. There was also put in evidence a copy of the notice of sale made by C. H. Kendall, administrator of the estate of Archibald Hodge, deceased, dated August 6, 1869, reciting that on Tuesday, the 7th day of September, 1869, he will proceed to sell, in conformity with the order of the probate court of Fort Bend County, between the legal hours, before the courthouse door in said county, to the highest bidder, on a credit of twelve months, dating from the 2d day of February, 1869, the same having been sold on that day, and Thomas Fallon became the purchaser, and has not complied with the terms of sale, the following tract of land situated in Montgomery County and State of Texas, containing 3722 acres, the same being the residue of the headright league of Archie Hodge, the purchaser giving a lien on the land to secure the purchase money. The administrator executed to Dunlavy a deed, dated September 15, 1869, which recited that he had made an application for an order to sell the same, which had been acted on at January term, 1869, of the court, and that after due legal notice he had sold the land on Tuesday, 7th day of September, 1869, between the legal hours, before the courthouse door, in the town of Richmond, to the highest bidder, on a credit of twelve months, when Nelson Dunlavy became the purchaser at the sum of 11 cents per acre. This deed appears in the records of Montgomery County, with affidavits attached thereto showing that Kendall, the administrator, was dead, and that the instrument and the signature thereto were in his handwriting. It was not witnessed, and was never acknowledged by the maker. It was shown by the evidence, however, to have been a genuine deed executed by the purported maker thereof, C. H. Kendall, as the administrator of Archibald Hodge, deceased. A careful examination of the records and files of papers in the estate of Archibald Hodge, deceased, failed to show any application for the sale of the land in controversy, or the record of any order directing the sale thereof. Witnesses who testified as to the examination of the files and records stated that they had examined the probate docket and final records of estates and the minutes of the court from the date on which letters of administration de bonis non were granted to the administrator, C. H. Kendall, to the date of the final

order of confirmation of sale, page by page, and that no leaf was missing from the records, and had also examined the papers filed in the estate, but they had failed to find any order directing the sale or an application therefor either in the minutes or records or among the files of the papers. It was shown that the courthouse was burned about 1884 and that a great many papers had been lost, and that it was possible that some file papers in the estate may have been lost, but that the minutes, court docket, and final records covering the time between the appointment of Kendall and the order of confirmation were existent. From other evidence in the case it appeared that N. B. Dunlavy, to whom the land had been conveyed in trust for Henry Dunlavy, afterwards conveyed the same to Rosa L. Freeman, who was the daughter of Henry Dunlavy. Henry Dunlavy was the surviving husband of Frenetta Hodge, the daughter of Archibald Hodge, and the father of the plaintiff, M. B. Dunlavy. Rosa Freeman was the daughter by a second marriage, and half sister to the plaintiff, M. B. Dunlavy. The defendant, O. W. Arnold, has deraigned title by mesne conveyances from Rosa Freeman and her husband to himself. There was evidence tending to show possession of the land by the defendant such as would support the statute of limitation for three years against all the plaintiffs, with the certain exceptions as to whom there is no controversy. Heirship was shown as alleged.

Upon the trial of the case the court below held that the plaintiffs, as the heirs of Lottie Hodge, were entitled to recover one-half of the land in controversy, but that the sale of the land in the administration of the estate of Archibald Hodge, deceased, vested title in the defendant, O. W. Arnold, through mesne conveyances to the remaining one-half.

The first error assigned by the appellant is upon his plea of the three years statute of limitation. He contends that by the inventory and sale of the land as the property of Archibald Hodge, deceased, he has color of title within the statute. Upon the death of Lottie Hodge her community interest in the land descended to and vested in her children. The probate court only had jurisdiction of and could only sell the one-half thereof belonging to Archibald Hodge, the husband. It had no right to adjudicate that the land was his separate property, or to make any adjudication as to the title thereof, and the order of court approving the inventory, if any was made, and the sale of the land by the court did not operate as a sale of the community interest of Lottie Hodge, and could not furnish color of title so as to support the statute of three years limitation. Bradley v. Love, 60 Texas, 472; Mayo v. Tudor's Heirs, 74 Texas, 471; Heirs of Edwards v. Mount, 61 Texas, 398; Chapman v. Chapman, 11 Texas. Civ. App., 396.

There is nothing in the evidence to show that any of the property that was inventoried belonged to the community estate of Archibald Hodge and Lottie Hodge, except the residue of the headright in con-

troversy, nor is there any evidence whatever to show that the provisions in the will made for the daughters Frenetta, Cynthia, and Emily were intended as a settlement of their claim to the community interest of their mother in the headright league, more than half of which was then on hand. There is nothing to show that the conveyance of 640 acres of the league made to Cynthia was intended as such a settlement, except the fact that it was a part of the community property which, under the decision in Sparks v. Spence, 40 Texas, 690, might be sufficient to create the presumption that it was in settlement; but as to this the court made no finding whatever, and the question of advancement or settlement was not noticed as an issue in the case. The appellant made no motion for a new trial nor any motion for a finding upon this question, nor called the attention of the court to it in any manner whatever. We must decline, therefore, to review the evidence in this respect. It can not be made a ground of error. Thomas v. Quarles, 64 Texas, 493. It will not be presumed that the provisions of the will were made in settlement of the community interest of the parties. We see nothing in the contention that the plaintiff, M. B. Dunlavy, is estopped by reason of the fact that his half sister, Rosa Freeman, the remote grantor of the defendant, O. W. Arnold, received the land as a share of her father's estate.

We do not think that the plea of stale demand can apply to the rights of the plaintiff in this case. Although it is now well settled that the community interest of the wife in the land conveyed to the husband is an equitable title, yet upon the death of Lottie Hodge her community interest descended to her children and will support the action of trespass to try title for the recovery thereof. Her right constituted a title to which only the statute of limitations would apply.

By cross-assignment of error the appellees contend that they should have had judgment also for the interest of their ancestor Archibald Hodge, because the administration sale was void for the reason that no order of sale of the land was shown. It was decided in the case of Ball v. Collins, 5 Southwestern Reporter, 622, that the sale of land made by the administrator in that case was not valid in the absence of an order of sale, citing the Act of August 9, 1876. 1 Sayles' Rev. Stats., art. 2113 (2059). But other and more recent decisions have convinced us that it should be conclusively presumed from the order of confirmation of sale that the sale was made in accordance with law. The principles are discussed in the cases of Crawford v. McDonald, 88 Texas, 630; Templeton v. Ferguson, 89 Texas, 57; Martin v. Robinson, 67 Texas, 375. It was said in Bartly v. Harris, 70 Texas, 183, that the order of confirmation had been held presumptive of the order of sale.

The appellees have also assigned as error the failure of the court to allow them for timber used by the defendant from the land. We dispose of this question in the same manner as that of the settlement with the plaintiffs for the community interest of their mother by their de-

ceased father. The court made no finding in respect thereto, and the appellees were content with the judgment and made no motion or any effort to have the court pass upon the question.

The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.