LINDLEY et al. v. LINDLEY et al.
(No. 1476.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1915. Rehearing Denied June 10, 1915.)

1. DESCENT AND DISTRIBUTION ☞99—DEED —CONSTRUCTION—ADVANCEMENT.

Where parents conveyed land to their daughter, by deed reciting that "we, for and in consideration of the sum of one thousand dollars to us in hand paid by (the daughter), and for the purpose of conveying to her the hereinafter described land, which is to be a part of her interest as one of our lawful heirs at our death, the same to be a credit on her part of our landed estate of one thousand dollars, have granted, sold," etc., such deed would be construed as an advancement to the daughter; the recital of consideration being formal and not intended to be construed as a recital of fact.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 404–410; Dec. Dig. ☞99.]

2. FRAUDS, STATUTE OF ☞56—ORAL AGREEMENT AFFECTING LAND.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1103, providing that no estate of inheritance or freehold or lease for more than one year in lands and tenements shall be conveyed unless by an instrument in writing subscribed and delivered by the party disposing of the same, or by his agent authorized thereto by writing, where a father executed a deed reading, "This instrument is a deed that I acknowledge to my wife and our children that I have not deeded any land to as a gift," and thereafter, upon a dispute as to the ownership of the land, a daughter to whom the father had deeded land as a gift made an oral agreement with the grantees in the father's deed by which all parties waived and abandoned any and all claims that any of them had lands given them, and agreed to divide the land equally, such verbal agreement could not pass title to the daughter to an interest in the land.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83–89, 136–138; Dec. Dig. ☞56.]

3. FRAUDS, STATUTE OF ☞56—ORAL CONTRACT TO CONVEY LAND.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, providing that no action shall be brought on any contract for the sale of land unless the promise to be enforced or some memorandum thereof shall be in writing and signed by the party to be charged, where a father executed a deed reading, "This instrument is a deed that I acknowledge to my wife and our children that I have not deeded any land to as a gift," and thereafter, upon a dispute as to the ownership of the land, a daughter, to whom the father had deeded land as a gift, made an oral agreement with the grantees in the father's deed by which all parties waived all claims that any of them had had lands given them, and

agreed to divide the land equally, such verbal agreement was not enforceable by the daughter against the grantees in the father's deed, as a contract by them to convey her an interest in the land.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83–89, 136–138; Dec. Dig. ☞56.]

4. ESTOPPEL ☞93 — AGREEMENT WAIVING CLAIMS TO LAND.

Where a father deeded land to such of his children as he had not already made advancements to, and such children orally agreed with a daughter to whom an advancement had already been made that all parties would waive conflicting claims and divide the land equally, on the faith of which the daughter paid her share of the cost of defending a suit concerning the land, the agreement did not vest title in her to her aliquot share of the land through the doctrine of equitable estoppel, since the case was merely one where vendor refuses to convey to a vendee who has paid the purchase price of land, as verbally agreed upon, in which case there is no equitable estoppel, and the transaction is within the statute of frauds.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 264–275; Dec. Dig. ☞93.]

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Suit to partition land by Ephraim Lindley and others against J. H. Lindley and others. From the interlocutory judgment, defendants appeal. Reformed and affirmed, and remanded for further proceedings.

T. D. Montrose, of Greenville, for appellants. Crosby, Hamilton & Harrell, of Greenville, for appellees.

WILLSON, C. J. By a deed dated January 27, 1899, Jahu Lindley conveyed 588 acres of land to his wife, Sallie, "for the period," quoting, "of her natural life and then to be divided between my children equally, except those that has had land given to them." As explanatory of Lindley's intent in making it the deed contained a recital as follows:

"This instrument is a deed that I acknowledge to my wife and to our children that I have not deeded any land to as a gift."

Jahu Lindley died March 9, 1906.

April 25, 1906, J. M. Lindley, son of Jahu and Sallie Lindley, claiming to be owner of a one-half undivided interest in the land, by virtue of conveyances made to him by his mother after the death of his father, sought by a suit (numbered 6246) then commenced by him in the district court of Hunt county against his mother and his brothers and sisters then alive, and against children of his brothers and sisters then deceased, to have the land partitioned between himself and them. The suit resulted in a judgment, rendered May 6, 1907, as follows: (1) Canceling the deeds from said J. M. Lindley's mother, by virtue of which he claimed title to an undivided one-half of the land, on the ground that he had induced his mother to execute same by the exercise over her of undue influence. (2) Determining that said J. M. Lindley's parents had given him land during the lifetime of his father, and therefore that he took nothing by virtue of the deed of his father, dated January 27, 1899, above referred to. (3) Further determining that by virtue of said deed the land belonged to the defendants Harlon Lindley, Cordelia Jernigan, Pegg Ann Booker, Ephraim Lindley, Marshall Lindley, Pearl Winton, Carl Winton, Alice Hall, Laura Needham, Carl Lindley, Eva Floyd, and Joe Edwards, children and grandchildren of said Jahu Lindley, subject to the life estate therein owned by his widow, Sallie Lindley. (4) That said J. M. Lindley take nothing by his suit.

Sallie Lindley, widow of Jahu Lindley, died February 6, 1913.

This suit was commenced August 26, 1913, by appellees Ephraim Lindley, Mellie Jernigan, and others, children and grandchildren of said Jahu and Sallie Lindley, both then deceased, against appellants J. H. Lindley, Jack Millsaps, and others, also children and grandchildren of said Jahu and Sallie Lindley, to partition said 588 acres of land, which was alleged to be of the value of $25,000. The parties plaintiff and defendant were all defendants in the suit referred to above as having been brought in 1906 by J. M. Lindley. The appeal is by said J. H. Lindley and by Jack Millsaps, John Booker, and Mintie Crisp, joined by her husband, children of Pegg Ann Booker, deceased, who was a daughter of said Jahu and Sallie Lindley, from a judgment determining that the land was owned in proportions stated (and appointing commissioners to partition same accordingly) by parties to the suit as follows: Ephraim Lindley, Mellie Jernigan, Cordelia Jernigan, and J. H. Lindley, each one-eighth thereof; E. M. Lindley, C. C. Lindley, Lizzie Prim, Sallie Hendrickson, and Inez Moore, jointly, one-eighth thereof; J. H. Winton, Alice Hall, Laura Needham, and Pearl Buren, jointly, one-eighth thereof; Eva Floyd, Carl Lindley, and Joe Edwards, jointly, one-eighth thereof; and Jack Millsaps, John Booker, and Mintie Crisp, jointly, one-eighth thereof.

[1] On the trial it was shown that by a deed dated March 22, 1897, Jahu and Sallie Lindley conveyed certain land to their daughter Mellie Jernigan. The deed contained recitals as follows:

"That we, Jahu Lindley and wife, Sallie Lindley, of the county of Hunt and state aforesaid, for and in consideration of the sum of one thousand dollars to us in hand paid by Mellie Jernigan, and for the purpose of conveying to the said Mellie Jernigan the hereinafter described land, which is to be a part of her interest as one of our lawful heirs at our death, the same to be a credit on her part of our landed estate of one thousand dollars, have granted, sold," etc.

Both Mellie Jernigan and her husband testified as witnesses. Neither of them claimed in their testimony that any sum of money, or other thing of value, had been paid by them or either of them as a consideration for the conveyance of the land to the former;

nor was there evidence of any kind, unless the recital in the deed of the payment by Mellie Jernigan of $1,000 to her father and mother should be regarded as of probative force, showing that the conveyance to her was based on a valuable consideration. Appellant insists that the recital, when considered, as it should be, with reference to other recitals in the portion of the deed copied above, reasonably could not be construed as evidence of the payment by Mellie Jernigan to her parents of anything for the land; that, on the contrary, it conclusively appeared from the recitals, when construed together, that the land was given to Mellie Jernigan by her parents as an advancement out of their estate. Therefore appellant insists, further, that the trial court erred when he found that Jahu Lindley had not deeded land to Mellie Jernigan as a gift; and that, because he had not, she was a grantee in the deed conveying the 588 acres and as such owned an interest in the land. We are of opinion the contention should be sustained. It is plain from the face of the deed, we think, that the conveyance to Mellie Jernigan was intended as an advancement to her; in other words, was a gift to her by her parents. The recital therein of the payment by Mellie Jernigan of $1,000 obviously was formal and not intended to be construed as the recital of a fact. As shown by the recitals following it, it was not intended to be indicative of anything more than the value to be placed on the land in the adjustment contemplated after the grantors' death between their heirs of their rights as such.

[2-4] The trial court found that, after the death of Jahu Lindley, all of his children then alive, except J. M. Lindley, and the descendants of those dead—

"met and entered into an agreement, by the terms of which they agreed to waive and abandon any and all claims that any·of them had had lands given them, and agreed that they would join in the defense of cause No. 6246, styled 'J. M. Lindley v. Harlon Lindley et al.,' and pay the expenses of such defense jointly according to their interests in the land, and that at the death of Sallie Lindley they would divide the land equally according to the terms of said deed."

The court further found that:

"In pursuance of said agreement, a contract was entered into in writing by all the parties with Looney & Clark and Mulkey & Hamilton, by which Mellie Jernigan became liable and bound for her respective proportion of an attorney's fee of $1,000 in the defense of said cause No. 6246," and that Mellie Jernigan paid her "proportion of the attorney's fees and expended money, time, and trouble in the defense of said law suit, and that the other children and their descendants of Jahu Lindley received the benefits thereof."

On the facts so found by him, the trial court concluded as a matter of law that appellants were estopped from asserting that Mellie Jernigan was not a grantee in the deed of Jahu Lindley of January 27, 1899, and from asserting that she was not interested in the lands in controversy to the extent of one-eighth thereof. It is insisted, and we agree, that the trial court erred in so concluding. The agreement by the parties to suit No. 6246 "to waive and abandon," as found by the trial court, "any and all claims that any of them had had lands given them," and that they "would divide the land equally," on the faith of which Mellie Jernigan expended money, time, and trouble in assisting in the defense of said suit No. 6246, was a verbal one. Therefore it could not have operated to pass title to her to an interest in the land. Article 1103, Vernon's Statutes. For the same reason, it was not enforceable against appellants as a contract on their part to convey to her an interest in the land. Article 3965, Vernon's Statutes; Arnold v. Ellis, 20 Tex. Civ. App. 211, 48 S. W. 886; Dietrich v. Heintz, 44 Tex. Civ. App. 602, 99 S. W. 417. The transaction was lacking in essential elements of equitable estoppel. Mellie Jernigan knew that her father had given her land, and that therefore she did not come within the description in the deed of the grantees therein. She must be held to have also known as a matter of law that she therefore did not take anything by virtue of the deed. The ground of the estoppel asserted therefore was not that Mellie Jernigan had been misled by appellants as to the facts upon which she acted in expending money, time, and trouble in assisting in the defense of suit No. 6246, but that, knowing the facts, she had been induced to act as she did because she relied upon appellants' promise to convey her an interest in the land. The doctrine of estoppel, it seems to us, has no application. The case as made by the testimony is not different from the ordinary one in which the vendor refuses to convey to the vendee who has paid the purchase price of the land as verbally agreed upon. In cases of that kind, it has been held that the transaction is within the statute of frauds. Garner v. Stubblefield, 5 Tex. 552; Jones v. Carver, 59 Tex. 293.

The conclusion we have reached is that the judgment is wrong in so far as it determined that appellant J. H. Lindley owned a one-eighth instead of a one-seventh undivided interest in the land; in so far as it determined that appellants Jack Millsapps, John Booker, and Mintie Crisp owned, jointly, a one-eighth instead of a one-seventh undivided interest therein; in so far as it determined that Joe Earl Edwards owned one-third of a one-eighth, instead of one-third of a one-seventh interest therein; and in so far as it determined that Mellie Jernigan owned a one-eighth undivided interest therein. The parties entitled to claim under said deed of January 27, 1899, other than Joe Earl Edwards and appellants J. H. Lindley, Jack Millsaps, John Booker, and Mintie Crisp, in their pleadings alleged that the land was owned by them and Mellie Jernigan and said Joe Earl Edwards and said appellants in the proportions of one-eighth to each child then

living of said Jahu and Sallie Lindley, except J. M. Lindley, and of one-eighth to the children, jointly, of each of the deceased children of said Jahu and Sallie Lindley, and prayed that it be partitioned accordingly. Therefore we are of opinion the ownership of the land undivided should have been adjudged to be in the parties in these proportions: In J. H. Lindley, one-seventh; in Jack Millsaps, John Booker, and Mintie Crisp, jointly, one-seventh; in Ephraim Lindley one-eighth; in Cordelia Jernigan, one-eighth; in E. M. Lindley, C. C. Lindley, Lizzie Prim, Sallie Hendrickson, and Inez Moore, jointly, one-eighth; in J. H. Winton, Alice Hall, Laura Needham, and Pearl Buren, jointly, one-eighth; in Joe Edwards, one-third of one-seventh; in Eva Floyd and Carl Lindley, jointly, two-thirds of one-eighth; and in Mellie Jernigan one-twelfth of the whole. The judgment of the court below will be reformed accordingly, and as reformed will be affirmed. The cause will, however, be remanded for such further proceedings as are necessary to complete the partition.

The contention made by appellants Jack Millsaps, John Booker, and Mintie Crisp that they had improved a part (109 acres) of the 588 acres and were entitled in the partition to be made to have same allotted to them, is overruled. The findings of fact made by the trial court with reference to this contention are, we think, supported by evidence in the record, and the conclusion reached by him as to the law applicable to these facts was, we think, correct.