### CLOIS L. GREEN ET. AL. v. W. M. PRIDDY.

#### No. 3756. Decided April 18, 1923.

#### (250 S. W., 656).

**1.—Stare Decisis—Former Appeal—Identity of Facts.**

Whether the ruling of a Court of Civil Appeals on a former appeal (that the evidence was sufficient to present the issue of estoppel) should be persuasive on another appellate court on a second appeal can not be determined in the absence of a showing that the same evidence on the question was involved in each appeal. (p. 577).

**2.—Same—Res Adjudicata.**

Though the evidence (on estoppel) was the same on both trials, the ruling on a former appeal and reversal (that it required a submission of that issue) though it should be adhered to unless clearly erroneous, constitutes no bar to a reconsideration of the question on a subsequent appeal nor to a revision of such holding if erroneous. (pp. 577, 578).

**3.—Conveyance—Instrument in Escrow.**

An instrument concerning title to lands is placed in "escrow" when deposited with a third person to be delivered by him to the grantee and to take effect on the happening of a contingent event in the future. (p. 578).

**4.—Same.**

Whether the instrument concerning title deposited by the parties with a third person to await future events conveys a present interest to the grantee depends on the intention of the parties, to be determined by the nature and terms of the instrument and all the circumstances attending its execution and such deposit. (p. 578).

**5.—Same—Present Equitable Interest—Case Stated.**

The owner of a lease of oil rights in land made a written contract, in triplicate, to transfer same to a purchaser. One copy was to be and was

deposited in a bank, together with one-half the purchase price, the seller to furnish abstract of title, and, if title was accepted, transfer to the purchaser to be executed on payment of the remainder by him. Held, that such deposit of the contract was not in escrow; that it was not an instrument to be delivered and to take effect on a future contingency; but that it conveyed to the purchaser a present equitable interest such as is governed by the statute of frauds.  (pp. 578, 579).

**6.—Same—Estoppel.**

See facts held not to constitute an estoppel of the holder of the equitable right to obtain a transfer of an oil lease from its owner, from asserting such title as against another claiming a transfer of the same lease.  (pp. 579-582).

**7.—Same—Contract—Rescission and Abandonment.**

. Facts considered are held not to constitute a rescission and abandonment of his contract by a purchaser who, having right to an assignment of an oil lease from its owner and consenting to the substitution, conditionally, of another as such purchaser, repudiated the contract making such assignment to the latter as not being in accordance with the condition agreed to by him, and exceeding the authority of the agent authorized by him to make, on specified conditions, such transfer to another.  (p. 583).

**8.—Contract—Approval of Title—Time.**

Three days time only was to be allowed a purchaser for approval of a title, before an agent was authorized to close the contract.  The act of such agent in changing the time permitted to five days was a material departure from his authority rendering his contract for his principal unauthorized, where the value of the property (an oil lease) was dependent on the result of a well boring on adjoining land, in daily expectation of striking oil, and which did so within the five days, but not within three.  (p. 580).

Questions certified from the Court of Civil Appeals for the Second District in an appeal from Wichita County.

The questions were referred by the Supreme Court to the Commission of Appeals, Section A, and its opinion thereon, being adopted by the Supreme Court, is certified to the Court of Civil Appeals as its answer.

*Thompson, Barwise, Wharton & Hiner,* and *Weeks, Morrow & Francis,* for appellants

First certified question (effect of decision on former appeal) See Franklin v. Cassaday, 62 Texas, 420; Roberts v. Armstrong, 231 S. W., 373.

Second certified question (Equitable Title).  29 A. & E. Ency. of Law, 902; Browne on Statute of Frauds, Sec. 271; Boswell v. Pannell, 146 S. W., 233; 20 Cyc., 219; Clapp v. Tower, 93 N. W., 862; Dial v. Crain, 10 Tex., 454; Devlin on Deeds, 2nd Ed., Sec. 29; Fouts v. Foudray, 120 Pac. 960 (Okla); Gould v. Day, 94 U. S. 405; Green v. Cole (Mo. Sup.), 15 S. W., 317; Hughes v. Moore, 7 Cranch, 176; Pomeroy on Contracts, Secs. 314, 317; Pomeroy on Equity, Vol. 5, Secs. 2268, 2262; Pantaze v. McDill, 228 S. W., 962;

25 R. C. L., 580; Sanborn v. Murphy, 25 S. W., 459; Smith v. Burman, 3 Sumner, 435. (Fed. Case No. 13019); Summerhill v. Hanner, 72 Tex., 224, 9 S. W., 882; Sanderson v. Wellsform, 116 S. W. 383; Simpson v. Green, 231 S. W., 375; Sarasohn v. Kamaily, 193 N. Y., 203, 86 N. E., 24; Taylor v. Sanford, 108 Tex., 340, 193 S. W., 661; Templeman v. Closs, 212 S. W., 187; Wright v. Thompson, 14 Tex., 561; Wood on Statute of Frauds, Sec. 227; Williams v. Haddock, 39 N. E., 826; Words & Phrases, Vol. 2, p. 319, 2nd Series; Weaver v. Simmons, 38 S. W. 1140; Wigmore on Evidence, Sec. 2408.

Third certified question (Estoppel).

No Estoppel:

1.—Priddy Had Full Knowledge: Browne on Statute of Frauds, Sec. 449; Bigelow on Estoppel, 6th Ed., pp. 603, 604, 681; Berry v. Donnelly, 26 Tex.; 747; Cauble v. Worsham, 70 S. W., 739 (Sup.); Clark v. Guest, 46 N. E., 864; Davis v. Allison, 211 S. W., 984; Ewart on Estoppel; Herman on Estoppel, Sec. 408; Holcomb v. Boynton, 37 N. E., 1035; Jordan v. Money, 5 H. L. Cases, 185; Lechenger v. Bank, 96 S. W., 642; Lindley v. Lindley, 178 S. W., 784; Maddison v. Alderson, 8 App. Cases, 473; Pomeroy's Equity, Sec. 805, 808, 810; Scoby v. Ewert, 28 Tex., 731; Wortham v. Thompson, 16 S. W., 1059.

2.—Moore not having been held out by Lesh, Priddy in dealing with him was charged to know his authority: Bigelow on Estoppel, p. 681; Brant v. Merchants Coal Co., 93 U. S. 326; Colvin v. Blanchard, 106 S. W., 323 (Sup.); Machinery Co. v. Peter, 19 S. W., 861 (Sup.); Morgan v. Harper, 236 S. W., 71; Shirley v. Coffin, 121 S. W., 181 (C. C. A.); 134 S. W., 404 (Sup.).

3.—No Sufficient Injury: (a) Priddy only signed contract conditioned on title; (b) Actually paid out nothing; (c) Seeks to set up loss of gain as an injury, 23 A. & E. Ency. of Law, 517; Adler v. Pim, 80 Ala., 351; Anderson v. Hubbell, 93 Ind., 570; Anderson v. Walker, 49 S. W., 947 (C. C. A.); 93 Tex. 125 (Sup.); Bigelow on Estoppel, p. 696; 16 Cyc., 725; Davis v. City of Appleton, 85 N. W., 230; Davis v. Allison, 211 S. W., 980; Dent v. Smith, 92 Pac., 307; Ewart on Estoppel, p. 140; Gherstadengen v. Hartzell, 83 N. W., 230; Herman on Estoppel, Secs. 407, 425, 404; Hereford Cattle Co. v. Barnhart, 147 S. W., 662; Llano Granite & Marble Co. v. Hollinger, 212 S. W., 153; Low v. Moore, 72 S. W., 420; McLemore v. Beckerstaff, 179 S. W., 538; Pomeroy's Equity, Sec. 812; Russell v. Maloney, 94 Am. Dec. 358; Ricketson v. Best, 134 S. W., 353; Turner v. Waldo, 40 Vt. 56; Townsend Savings Bank v. Todd, 47 Conn., 170.

4.—Priddy secured, as he plead, contract different from one Moore was authorized to make.

5.—Priddy plead Moore was to make contract to sell, but only

made option contract: Galvin v. McConnell, 117 S. W. 213; Mims v. Mitchell, 1 Tex. 448; Moss v. Wren, 120 S. W., 847; Parker v. Beavers, 19 Tex. 410; Provident Natl. Bank v. Webb, 128 S. W. 428.

6.—Above assumes Moore authorized to act when he did, while jury found that he was not then to act, hence Moore's acts there cannot affect Lesh: Colvin v. Blanchard, 101 Tex., 235, 106 S. W., 234; Dougherty v. Lewright, 174 S. W., 843; Morgan v. Harper, 236 S. W., 71; Shirley v. Coffin, 121 S. W., 181 (C. C. A.) 131 S. W., 404 (Sup.); Tompkins Machinery Co. v. Peter, 19 S. W., 861; Madden v. Cheshire, 94 Pac., 793.

7.—Whatever estoppel applies against Lesh, his associates are not bound thereby, having made or authorized no statements, and Priddy being acquainted with their title before any injury to him.

Fourth Certified Question (Rescission).

1.—No Rescission in fact: Black on Rescission and Cancellation, Sec. 1; 1 C. J., 6; Cauble v. Worsham, 96 Tex., 786, 70 S. W., 737; Clitus v. Langford, 24 S. W., 324; Bower on Waiver, Sec. 1; Equitable Life Co. v. Ellis, 147 S. W., 1157; Esslinger v. Pasco, 105 N. W., 362; Hogan v. Gaskell, 6 Atl. 879 (N. J.); Lindley v. Lindley, 178 S. W., 784; Reams v. Thompson, 62 S. E., 1014; Richardson v. McMelty, 24 Cal., 339; Sanborn v. Murphy, 25 S. W., 612; Stephens v. Mansfield, 11 Cal., 363; St. Stephen Church v. Bragaw, 56 S. E., 688; 7 Words & Phrases, 6139; Worsham v. State, 120 S. W., 440; Walls v. Cruse, 235 S. W., 1099.

2.—Even if rescission intended same ineffective under Statute of Frauds: (a) General Statement of Law: 29 A. & E. Ency. of Law, 902; Bouvier's Dictionary, 3rd Ed.; Browne on Statute of Frauds, Sec. 227; 20 Cyc., 219; Cauble v. Worsham, 96 Tex., 86, 70 S. W., 737; Clitus v. Langford, 24 S. W., 324; Davis v. Cox, 239 S. W., 917; Devlin on Deeds, 2nd Ed., Sec. 29; Dial v. Crain, 10 Tex., 444; Evans v. Ashe, 50 Tex. Civ. App., 54, 108 S. W., 1190; Erwin v. Daniels, 79 S. W., 61; Friar v. Baldridge, 102 S. W., 992 (Ark.); Gardner v. Sittig, 222 S. W., 1090; Huffman v. Mulkey, 56 Tex., 556; 14 S. W., 1029; Henry v. Hale, 233 S. W., 1009; Mussey v. Holt, 24 N. H., 248; Pomeroy's Equity, Sec. ——; Rooney v. Porch, 239 S. W., 304; 25 R. C. L., 580; 25 R. C. L., 579; Scott v. Cannon, 240 S. W., 304; Summerhill v. Hanner, 72 Tex. 224, 9 S. W., 882; Staley v. Stone, 14 Tex. Civ. App.; 299 S. W., 1017, 1019, 1020; Smith v. Burman, 3 Sumer., 435, Fed. Case No. 13019; Sanborn v. Murphy, 25 S. W., 459; Thompson v. Robinson, 93 Tex., 165, 171, 54 S. W., 243; Walls v. Cruse, 235 S. W., 1099; Words and Phrases, 2nd Series, Vol. 2; Williston on Contracts, Sec. 491.

(b) No Complete Execution: Browne on Statute of Frauds, Secs. 116, 454, 457; Cooper v. Hinman, 235 S. W., 564; Lodge v. Leverton, 42 Tex., 18; Shoewalter v. McDonald, 18 S. W., 491.

(c) No Sufficient Part Performance: Bradley v. Owsley, 19 S. W.,

340; Browne on Statute of Frauds, Secs. 457, 458; Clark v. Guest, 43 N. E., 862; Cunningham v. Cunningham, 32 S. E., 999; Foote v. Medlicott, 1 Ball. & B., 400; Glass v. Hulbert, 102 Mass., 40; Gregory v. Mitchell, 18 Ves., 333; Graves v. Goldthwait, 26 N. E., 861; Hooks v. Bridgewater, 229 S. W., 1114; Jervis v. Peck, Hoffman Chancery Reports (N. Y.), Vol. 6, p. 474; Lodge v. Leverton, 42 Tex., 31; Lechenger v. Bank, 96 S. W., 638; Pomeroy on Equity, 6th Ed., Sec. 830; Sec. 2239, Vol. 5, p. 5001; Pomeroy's Specific Performance, Par. 107, Secs. 108, 120, 116, 103, 104; Storey's Equity, Secs. 1050, 1051, 1048; Texas & Pacific Coal Co. v. Hamil, 238 S. W., 672; Williston on Contracts, Sec. 592.

(d) No Injury to Godley Company: (1) Priddy took with knowledge and stands in no better attitude: Browne on Statute of Frauds, Sec. 449; Dobson v. Zimmerman, 118 S. W., 238; Maupin on Marketable Title, Sec. 98; Roberts v. McFadden, 74 S. W., 1005.

Fifth Certified Question (Is Contract Lesh's): Barnett v. Lynn, 203 Pac., 388; Crest v. Morgan, 245 S. W., 664; Ferguson v. McBean, 91 Cal., 63, 27 Pac. 518; Gelig v. Lake Road Co., 2 N. W., 214; Heffron v. Pollard, 73 Tex. 96; 11 S. W., 165; Martin v. Hemphill, 237 S. W., 550; Meachem on Agency, Secs. 1713-1717; Rill v. Bush, 27 Pac. 723, 16 Colo., 492; Re Bateman, 7 Miscl., 335; Shurock v. Spring Lake Co., 19 Atl., 881.

*Martin & O'Neal, Bullington, Boone Humphreys & Hopkins,* and *I. W. Stephens, (Phillips, Townsend & Porter,* of counsel) for appellee.

1. On Certified Question 1 (a), see Miller v. Deahl, 239 S. W. 679, in which writ of error was denied. Also, Sisk v. Joyce, 68 S. W., 50; Campbell v. Elliott, 151 S. W., 1180; Moore v. Chamberlain, 152 S. W., 194; Whittaker v. Thayer, 110 S. W., 787; Mexican Central Ry. Co. v. Goodman, 55 S. W., 372; M. K. & T. Ry. Co. v. Redus, 118 S. W., 208; McFadden v. Railway, 129 S. W., 634; Roberts v. Armstrong, 212 S. W., 227; Baker v. Williams, 213 S. W., 986; Kimmell v. Edwards, 211 S. W., 284; Peas v. The State, 155 S. W., 657; Railway v. Sears, 155 S. W., 1003; Freeman v. Huffman, 156 S. W., 357.

2. On Estoppel, submitted in certified Question 1 (b) and certified Question 3, see Miller v. Deahl, 239 S. W., 679, in which writ of error was denied, and in which the opinion of the Court of Civil Appeals of the Seventh District on the former appeal in this case— Priddy v. Green, 220 S. W., 243—was approved and followed. Also, McDonald v. Whaley, 244 S. W., 596; Priddy v. Green, 220 S. W., 243; Mayer v. Ramsey, 46 Texas, 374, in which Storrs v. Baker, 6 Johns Ch. 122, 10 Amer. Dec., 316, is cited; Moore v. Tarrant County, 31 S. W., 709; Stanley v. Epperson, 45 Texas, 645; Dycus v.

Hart, 2 Tex. Civ. App., 354, 21 S. W., 299; Hughes v. Landrum, 40 Tex. Civ. App., 196, 89 S. W., 85, writ refused; Robertson v. Monnig Dry Goods Co., 211 S. W., 535; Schwarz v. National Bank of Tex., 67 Texas, 217; Brown v. Harris, 7 Tex. Civ. App. 664, 27 S. W., 45; Allen v. Berkmiller, 216 S. W., 647; Building & Loan Association v. Stewart, 94 Texas, 447, 61 S. W., 386, 86 Amer. St. Rep., 864; Morris v. Gaines, 82 Texas, 255; Fielding v. DuBose, 63 Texas 631; Robb v. Railway, 82 Texas, 392; Cox v. Bray, 28 Texas, 262; Stewart v. Crosby, 26 S. W., 140; Baylor County v. Craig, 69 Texas, 330; Hickey v. Behrens, 75 Texas, 488; Henry v. Thomas, 74 S. W., 599, writ of error refused; Allen v. Exchange Nat. Bank, 52 S. W., 575; Raney v. Miller, 51 Texas, 263; Continental Bank v. First National Bank, 50 N. Y., 580; Graham v. Thompson, 18 S. W., 58; Beaumer v. Morrison, 71 N. E., 402; Simpkins Equity, 671; R. C. L., Vol. 10, page 774, Sec. 93, and page 781, Sec. 96; Pomeroy on Equity, Vol. 2, Secs. 810, 813, 821, 804 and 805, and notes; Ewart on Estoppel, pages 149 to 153 and 263; Steffins v. Bank, 69 Texas, 578; Wells v. Derrickson (Ky.), 211 S. W., 773.

3. On Escrow and Statute of Frauds, involved in certified Question No. 2, see Day v. Townsend, 238 S. W., 213; Miller v. Deahl, 239 S. W., 679, in which writ of error was denied; Green v. Simpson (Comm. of Appeals), 231 S. W., 375; Pierce Oil Corporation v. Gilmer, 230 S. W., 1116. Also, Philadelphia Underwriters v. Moon, 229 S. W., 490; Pennsylvania Fire Insurance Co. v. Stockstill, 197 S. W., 1036; Detroit Insurance Co. v. Boren-Stewart Co., 203 S. W., 384, writ of error refused; Insurance Company v. Nowlin, 56 S. W., 198; Scott v. Childres, 60 S. W., 775 (writ refused); Crabb v. Bell, 220 S. W., 623; Manton v. City of San Antonio, 207 S. W., 951, writ refused; Lynn v. McCoy, 200 S. W., 885; Calhoun County v. Emigrant Company, 93 U. S., 124, 23 Lawyers Ed., 828; Green v. Priddy, 220 S. W., 252; First Devlin on Real Estate, Secs. 322, 327 and 328; 16 Cyc. 563 to 578; Washburn, Vol. III, p. 586; Corr v. Martin, 77 N. E., 870; Powers v. Rude, 79 Pac., 89; Gaston v. City of Portland, 19 Pac., 127; Ashford v. Prewitt, 14 So., 663, 48 Amer. St. Rep., 37; Smith v. Royalton Bank, 76 Amer. Dec., 179; Markman v. Guthrie, 72 Amer. Dec., 658.

We cite especially the opinion of the Court of Appeals of Colorado, in Walcott v. Johns, 44 Pac. Rep., 675, for holding that no title, estate or interest whatever in land passes to the proposed purchaser in an escrow agreement until the condition on which the title is to pass has been complied with. This case was cited in Knapp v. Andrus, 180 Pac., 910, as one of the cases holding that: "No title passes until escrow agreement is complied with." In Pomeroy v. Aetna Insurance Co., 120 Pacific, pages 345 and 246, the Supreme Court of Kansas cites with approval the case of Walcott v. Johns. In Knapp v. Nelson, 92 Pacific, 913, Walcott v. Johns is cited. In

Kay v. Emerson, 96 Pacific, 455, Walcott v. Johns is followed by the Supreme Court of Oregon. In Levy v. Levy, 34 N. W., 699, and Mohn v. Joslin, 142 N. W., 983, the Supreme Court of Iowa cited Walcott v. Johns with approval.

In Galvin v. Stokes, 192 Pacific, on pages 119 to 120, the Supreme Court of Colorado quotes from Walcott v. Johns after stating: "It is a settled principle of the law that, until the performance of the condition of an escrow agreement, the title to land to be conveyed remains in the grantor," etc. See also Sprague v. Haines, 68 Texas 216, in which it is held that the statute of frauds only applies to a contract for the sale of "an existing interest in land." See also Pipkins v. Bank of Miami, 179 S. W., 916, and Boswell v. Pennell, 146 S. W., 233.

4. On substitution and abandonment involved in certified Question No. 4, see Miller v. Deahl, 239 S. W., 679, in which writ of error was denied, and cases there cited; Hunter v. Hale, 233 S. W., 1005; Grubb v. McAfee, 212 S. W., 464; Cooper v. Hinman, 235 S. W., 564; Priddy v. Green, 220 S. W., 243; Evans v. Bentley, 29 S. W., 497; Staley v. Stone, 92 S. W., 1017.

5. For authorities on the issues submitted in certified Question No. 5, see Huffman v. Cartwright 44 Tex., 296; Tynan v. Duling, 25 S. W., 465; Whitney v. Wyman, 101 U. S., 392, 25 L. Ed., 1050; Wells v. Derrickson, (Ky.), 211 S. W., 773; Tewksberry v. Howard, 37 N. E., 351; Roehl v. Howard, 15 N. E., 345. Also Garcie v. Yzaguirre, 213 S. W., 246.

MR. PRESIDING JUDGE GALLAGHER delivered the opinion of the Commission of Appeal, Section A.

This suit was instituted in the district court of Wichita County, Texas, by Clois L. Green, P. F. Lesh and others as plaintiffs against W. M. Priddy as defendant to establish their title to an oil and gas lease on 20 acres of land out of survey No. 87 Red River Valley lands and to enjoin defendant from interfering with their possession thereof. Plaintiffs admitted that they had conveyed all their rights in ten acres of said lands to Roberts and Hill who intervened. A trial of the case resulted in a judgment in favor of the plaintiffs. The Court of Civil Appeals at Amarillo reversed this judgment and remanded the cause for a new trial. 220 S. W., 243.

The second trial resulted in a judgment in favor of defendant Priddy. Plaintiffs appealed to the Court of Civil Appeals at Fort Worth. Pending the appeal intervenors compromised with defendant Priddy and at their request their appeal was dismissed. The Court of Civil Appeals reversed the judgment of the trial court in favor of defendant and rendered judgment against him in favor of plaintiffs. Pending consideration of a motion for rehearing the

Court of Civil Appeals certified to the Supreme Court the questions hereinafter set out.

The certificate is too long to copy in full. The substance only of the same so far as necessary to an understanding of the issues discussed will be set out herein. The Godley Oil & Gas Company, a corporation, owned an oil and gas lease on the 20 acres of land in question. On the 12th day of April, 1919, said corporation, acting by W. M. Moore, its president, made a valid contract in writing to convey said lease and leasehold estate in said land to P. F. Lesh. The following paragraphs quoted therefrom will sufficiently disclose the terms of the contract:—

"The consideration to be paid for the aforesaid oil and gas lease and leasehold estate is the sum of Forty Thousand Dollars, and to be paid as hereinafter set out: party of the first part agrees and binds itself within thirty days from this date to furnish an abstract of the title to the aforesaid land and premises, and the party of the second part shall have ten days after such abstract is furnished within which to have the same examined, and if said title is approved as good and merchantable as to land and leasehold estate, then this trade shall be fully consummated; in the event there are any objections to said title which can be cured within a reasonable time not to exceed thirty days from the date said objections are raised, then the party of the first part shall have such reasonable time within which to cure objections, and it binds itself to use every reasonable effort so to do; in the event there are objections which cannot be cured within such reasonable time, and which parties of the second part are not willing to waive, then this contract shall be fully terminated.

"It is agreed this contract, together with the sum of $20,000.00, paid by party of second part, shall be deposited in the First National Bank of Wichita Falls, Texas, and upon the following understanding: That if party of the first part shall fully comply with his part of this contract by furnishing the abstract above mentioned showing good and merchantable title in it to said oil and gas leasehold estate, but parties of the second part shall fail or refuse to carry out their part of the contract, then, in such event, said sum shall be forfeited to party of the first part as and for liquidated damages and not as penalty, otherwise to be applied as part of the purchase money for said property if said trade shall be consummated, or returned to the party of the second part should said title not be approved as good and merchantable, or not to be so made within the time above mentioned. Upon the consummation of this sale, party of the first part shall execute and deliver to said bank for party of the second part, a good and valid assignment and conveyance to said oil and gas lease to parties of second part, who shall thereupon pay over to said bank the remainder of said consideration to-wit: $20,000.00,

which sum, together with the $20,000.00 herewith deposited, shall be paid over to party of the first part."

This contract was in triplicate. It was signed after banking hours on Saturday. On Monday morning Lesh took a copy of the same and placed it in said bank together with his check for $20,000.00. While this contract was signed by Lesh alone his co-plaintiffs were also interested therein. Their interest however was not disclosed at the time nor was the same disclosed to defendant until after this controversy arose.

On the morning of April 17, 1919, Lesh met defendant Priddy and representing himself to be the owner of said lease agreed orally with him to sell the same to him for $50,000.00, $20,000.00 of said consideration to be paid in cash, the remainder in installments within 20 days. It was expressly stipulated that Priddy should have three days to examine the abstract and pass on the title. In this conversation nothing was said about the Godley Oil & Gas Company, nor about its president, W. M. Moore. Lesh left Priddy, declaring that he would go and have the necessary papers prepared at once. Thereafter, Lesh and Priddy had no further negotiations. No writing was at any time executed by Lesh agreeing to sell the lease to Priddy. Lesh went to Moore and told him that he had agreed to sell the lease to Priddy and requested him orally to prepare a contract for the conveyance of said lease from said corporation direct to Priddy for the consideration agreed upon between him and Priddy. Lesh then left to return later. Moore prepared a contract between the corporation and Priddy similar to the one between it and Lesh but providing for a consideration of $50,000.00 and that Priddy should have five days to examine abstract and pass upon title instead of three days, as agreed upon between Lesh and him. Without waiting for Lesh's return Moore took this contract to Priddy, secured his signature to same and his check for $20,000.00. Moore took said check to the bank on which it was drawn and had one of the executive officers mark it "good." There is nothing in the certificate tending to show that this action was authorized by Priddy or even contemplated by him when he gave said check to Moore. The check was not charged to his account by the bank until April 23. Moore stated to Priddy at the time he presented said contract for his signature that Lesh had told him that he had agreed to sell to said Priddy and in order to consummate the matter, had requested him to prepare a contract between the corporation and Priddy to be in lieu of the contract between said corporation and Lesh and had requested him to execute the same and secure Priddy's check for the initial payment. Moore, in the conversation, disclosed the fact that Lesh had a written contract with said corporation for the purchase of said lease which contract was then in the bank.

After Lesh left Moore he saw some of his associates and learned

that they had sold ten acres of said lease to Roberts and Hill for $60,000.00, and had received $10,000.00 earnest money on said sale.

Lesh returned later in the day and told Moore he could not sell 'the lease now and instructed him to return Priddy's check to him and call the matter off. Moore saw Priddy that evening or next morning but Priddy refused to accept the return of his check and filed his copy of his contract with the corporation with the county clerk for record.

Both Lesh and Priddy accepted the title of the Godley Oil & Gas Company and tendered compliance with the terms of their respective contracts. A controversy arose between Moore and the other directors of said corporation with reference to whether an assignment of said lease should be made to Lesh or to Priddy. Prior to that time Moore had general authority to enter into contracts of the kind under consideration and it was customary to substitute purchasers as was attempted to be done in this case. He also, prior to that time, had general authority to execute assignments of leases but he was required to be joined therein by the secretary whose duty it was to affix the seal of the corporation. The directors decided that an assignment of the lease should be made to Lesh. Moore refused to execute the same. The directors then instructed the vice president of the corporation to execute and deliver an assignment to Lesh. On April 21, 1919, Lesh paid the remainder of the purchase price, according to his contract, and received an assignment of the lease so executed.

Notwithstanding said decision of the board of directors of said corporation, Moore, on April 22, 1919, accepted $30,000.00 more from Priddy and as president of said corporation executed under seal and delivered to Priddy an assignment of said lease. This assignment was signed by Moore alone and Priddy knew that in doing so he acted without authority from the corporation.

At the time of the transactions above recited, Lesh and some of his co-plaintiffs were drilling a well in close proximity to the land covered by said lease and said well had reached a depth that it might any day prove to be a dry hole or a producer. On April 20, 1919, it became a large producer. Other facts shown by said certificate will be recited in connection with the respective issues hereinafter discussed.

Based on the facts recited in said certificate the Honorable Court of Civil Appeals propounds the following questions:—

"1. (a) Is this court precluded from holding that there is no issue of estoppel presented by the record now before this court, because of the holding of the Court of Civil Appeals for the Seventh District to the effect that the evidence raised an issue of estoppel? (b) Were we in error in holding that there was no estoppel?

"2 Did Lesh secure an equitable title to the lease in controversy

by virtue of the contract of date April 12, 1919, between himself and the Godley Oil & Gas Company, such as is governed by the Statute of Frauds?

"3. Do the facts above state set out, as pleaded and proved, show, as a matter of law, that Lesh and his associates were not estopped to assert title to the lease in question?

"4. Do the facts above set out show that the transaction between Lesh and Moore, as Lesh's agent and also as President of the Godley Oil & Gas Company on the one hand, and W. M. Priddy on the other, in substituting the contract of Priddy for that of Lesh, constitute a rescission and abandonment of the contract of April 12, 1919, between Lesh and Moore as President of the Godley Oil & Gas Company?

"5. Did this court err in not holding that the contract executed by Moore as agent of Lesh, of April 17, 1919, was binding on Lesh without his signature thereto, and without his name appearing thereon, on the ground that the statute of frauds does not require written authority of the principal to his agent to sign a contract binding the agent to convey an interest in land?"

The Court of Civil Appeals at Amarillo in reversing and remanding this case on the first appeal held that the evidence raised an issue of fact whether Lesh was on equitable principles estopped from asserting that his rights under his contract with the corporation were superior to the rights acquired by Priddy under his verbal contract with Lesh and his written contract with the corporation. The evidence introduced at the first trial which resulted in the judgment so considered and reversed by said court is not before us except as it may be embodied in the facts introduced in evidence on this trial. It is therefore impossible for us to say that the state of facts upon which that court based such ruling is in legal effect the same as the state of facts now before us for consideration. The application of the rule upon which the first question so certified is based contemplates that the facts on the second appeal shall be substantially the same as on the first appeal, or at least so nearly the same as not to affect materially the legal questions involved. Frankland v. Cassaday, 62 Texas, 418, 420. Even in such cases, however, the rule is not to be inflexibly applied. Upon subsequent appeals the court will adhere to its former rulings unless clearly erroneous, but such former rulings constitute no bar to a further consideration of the same question upon a subsequent appeal, nor to a revision of such holdings if, in fact, erroneous. Kempner v. Huddleston, 90 Texas, 182, 184-5; 37 S. W., 1066; Roberts v. Armstrong, (Com. Apps.), 231 S. W., 371, 373.

We answer question 1-(a) as follows:—

1-(a). The Court of Civil Appeals for the second district is not in its consideration of the case precluded from holding that there

is no issue of estoppel presented by the record before it because the Court of Civil Appeals for the Seventh District held that the evidence before it on a prior appeal raised an issue of estoppel. ·

The written contract between the Godley Oil & Gas Company and Lesh for assignment and transfer of said lease and leasehold estate vested in him an equitable interest in the land affected by said lease within the meaning of the statute of frauds. Such interest was fixed at the time of the signing of the contract. The parties thereto became at that time reciprocally trustees for each other, the one for the leasehold interest in the land and the other for the purchase money. R. S., Arts. 1103 and 3965; 29 Am. & Eng. Ency. Law, 902, par. (5); 20 Cyc. 219; 25 R. C. L. 580; Pomeroy on Contracts, Sec. 317; Wright v. Thompson, 14 Texas, 558, 561; Dial v. Crain, 10 Texas, 444, 453-4.

We understand counsel for Priddy to concede that the propositions of law above announced are correct and that they are applicable in this case, unless defeated by the fact that said contract or a copy thereof was by an agreement of the parties put up in a bank together with Lesh's check for $20,000.00 to be held pending the consummation of said contract. Counsel contend that placing said contract, together with said check in the bank, constituted said contract an escrow and that on that account no interest, equitable or otherwise, in said leasehold estate vested in Lesh by virtue of said contract until he performed all the conditions thereby made obligatory on him. An escrow is defined to be "a writing deposited by the grantor, promisor or obligor therein with a third person not a party thereto to be kept until the performance of a condition or the happening of a certain event, *then to be delivered to take effect.*" (Italics ours.) 21 C. J. 865. Whether an instrument placed with a third person is to be merely an escrow or a completely executed instrument vesting a present interest in the grantee or promisee according to its terms depends on the intention of the parties. In determining such intention not only the nature and terms of the instrument itself but all the circumstances attending its execution and delivery to the depository may be considered. 21 C. J. 872, 868. We do not think that the facts certified in this case raise an issue of escrow arising out of the placing of said contract in the bank. While the recitals· in the certificate concerning its execution are not specific, we gather therefrom that it was prepared and executed in triplicate. What disposition was made of the other two copies is not stated but the natural disposition would have been for each party to retain a copy thereof. The contract did not purport to be an assignmen or conveyance of the lease which, like a deed, would require delivery, actual or constructive. It did not in terms convey or attempt to convey an interest therein. Such interest in said lease and leasehold estate as Lesh acquired thereunder he acquired by

virtue of the rules of equity applicable in such cases. The agreement of the parties under which it was placed in the bank is contained in the contract itself and quoted above. This agreement required the corporation to first furnish an abstract showing a good and merchantable title in it to said leasehold estate; second, to cure defects in its title if objected to by Lesh and capable of being cured, and third, to execute and deliver to the bank a good and valid assignment and conveyance of said lease to said Lesh. Lesh was first to deposit $20,000.00 in the bank, next to pass on the abstract and title, and last, to deposit in the bank another $20,000.00. Each party was to proceed at once to do its, or his, respective part toward carrying the contract into effect. There is nothing to indicate that the copy of the contract placed in the bank was ever to be delivered. The final consummation of the contract was to be the delivery of a good and valid assignment and conveyance of the lease, an instrument purporting to convey and actually conveying a legal title to the leasehold estate, to which instrument the rules of law governing the delivery of deeds would be applicable.

We are not here dealing with the question whether the check for $20,000.00 deposited by Lesh with the contract was an escrow but only with the character of the contract under which Lesh made such deposit. We think the facts certified show that the contract under consideration was intended by the parties to take effect at the time of the execution of the same by them and that the deposit of a copy thereof in the bank did not convert it into an escrow nor postpone its taking effect to vest an equitable interest in said leasehold estate in Lesh until he had fully complied with all the obligations assumed by him therein. Weaver v. Simmons, 15 Texas Civ. App., 154, 38 S. W., 1140, 1141 (writ refused.) We, therefore, answer the second question certified as follows:—

(2) Lesh secured an equitable title to the lease in controversy by virtue of said contract of April 12, 1919, between himself and the Godley Oil & Gas Company, such as is governed by the statute of frauds.

In addition to the facts above recited the certificate shows that the jury found that Lesh and Priddy entered into a verbal agreement as to the price and terms of the sale of said lease on said 20 acres of land by Lesh to Priddy; that Lesh authorized Moore to get Priddy to sign a contract between Priddy and the Godley Oil & Gas Company and to get a check from Priddy but that said acts were not to be done in the absence of Lesh and before Lesh returned to Moore; that at the time Priddy signed the contract with Moore of April 17th, Moore informed him of Lesh's contract and that said contract was then in the bank; that Priddy in signing the contract of April 17 and delivering his check, relied upon the statement made to him by Lesh and by Moore.

When Lesh agreed with Priddy to sell his said lease he claimed to be the owner of the same. He said nothing about the legal title thereto being in the Godley Oil & Gas Company. He left Priddy ostensibly to have the necessary papers prepared to carry out his contract with him. He never mentioned Moore in his conversation with Priddy nor indicated that any one but himself would return to execute the written contract which he was to have prepared. Whatever power he delegated to Moore in that connection was express and special. Priddy, in dealing with Moore, could not fall back upon any supposed enlargement of such powers by implication. Moore had only such power and authority in the premises as Lesh had actually conferred upon him. He could not bind Lesh by assuming greater power or authority, notwithstanding he may have acted in good faith in doing so and notwithstanding Priddy may have believed that he possessed all the power he assumed to exercise and may have relied on such belief in signing the contract and delivering his check. Colvin v. Blanchard, 101 Texas, 231, 235, 106 S. W., 323, 324; Tomkins Machinery Company v. Peter & Sherrill, 84 Texas, 627, 631, 19 S. W., 860; Morgan v. Harper (Com. Apps.) 236 S. W., 71.

Change of the time which should be allowed to Priddy in which to examine the abstract and pass upon the title from three to five days was, under the circumstances, a material change. A definite result with reference to the well then being drilled was expected daily. Had such well proved a dry hole it would have greatly affected the value of the lease and might have resulted in financial loss to Lesh.

The finding of the jury that while Moore was authorized by Lesh to act in the premises, that he was not authorized to act in the absence of Lesh nor before his return, is material in determining whether Lesh is bound by the transaction between Moore and Priddy. The rule that a special agent must keep within his actual authority applies to the time and circumstances of executing the contract as well as to the substantial terms it shall contain. In such case, to bind the principal the agent must keep within the restrictions and must strictly pursue the methods prescribed by his instructions. Colvin v. Blanchard, *supra;* Pomeroy on Specific Performance, Sec. 77, p. 114. Lesh promptly repudiated the transaction between Moore and Priddy and directed Moore to return Priddy's check as soon as he learned of the same, and said check was promptly tendered to him.

There was no attempt to deceive Priddy with reference to the validity of the contract he made through Moore with the Godley Oil & Gas Company. He was not deceived. He knew that a prior contract to convey said lease to Lesh has been duly executed and was then in the bank. He knew, or ought to have known, that Moore's authority to act in behalf of Lesh in the premises, if conferred at all,

was conferred orally. He was charged by law with knowledge that his contract for the purchase of the lease could not be enforced against the rights of Lesh. Davis v. Allison, 109 Texas, 440, 450, 211 S. W., 980.

A case similar to this on the issue of estoppel was before the court in Wortham v. Thompson, 81 Texas, 348, 16 S. W., 1059. The facts in that case were that on the 22nd day of November, 1881, W. G. Johnson sold to Aaron Wortham 35 acres of land, for $100 cash and $250.00 in a note, no vendor's lien being retained in the deed or the note, though the note was recited as part of the consideration. On the 8th day of November, 1883, all of the note had been paid but $50.00. On that day, Johnson and Wortham agreed verbally to exchange lands, the latter to surrender the 35 acres for 14 acres in another place. Johnson made a deed to Wortham to 10-1/3 acres instead of 14 acres, and Wortham with his family, consisting of his wife and children, moved to the 10-1/3 acre tract, but Wortham made no deed to Johnson covering the 35 acres, or to anyone else. The deeds from Johnson to Wortham were general warranty deeds. While these negotiations were pending, Thompson, the appellee, was on a trade with Johnson for the 35 acres in case Wortham would agree to exchange the lands. Thompson testified: "Before I closed the trade with Johnson, he and I went together to Wortham's house, and they in my presence made the trade by which Johnson was to convey to Wortham the 14 acre tract for the 35 acre tract. I was trading with Johnson for land upon which Wortham was then living and after they had agreed on the terms of their trade, Wortham told me I could go ahead with my trade with Johnson for the land in controversy (35 acres), and acting upon this, I closed said trade with Johnson, and paid him the purchase money as recited in the deed." The deed to Thompson is dated November 7th, 1883, and contains general warranty. It developed that Wortham's title to the 10-1/3 acres conveyed to him by Johnson was clouded, and after said agreement to exchange, and after he had removed to the 10-1/3 acres, and after Thompson had bought the 35 acres from Johnson and paid Johnson for it, Wortham moved back on the 35 acres, and denied Thompson the right to recover. The court in passing upon that case said:—

"Plaintiff below, George S. Thompson, relies solely for title as against Wortham upon facts which he insists amount to estoppel. We do not think there is any estoppel in the case. Where the purchaser has the same knowledge of the facts as the real owner, and the latter does not induce him to believe in a state of facts other than those known, it is difficult to see how there can be any fraud, actual or constructive. To constitute an estoppel in pais the purchaser must be influenced by the conduct or representations of the owner, which, if untrue, would be a fraud upon him. Negligence

or acquiescence may amount to estoppel in certain cases, but we are not considering such a case and need not explain it. Where the purchaser is not deceived by any act or misrepresentation of the owner, but knows the facts and the condition of the right of the owner as well as he does, there can be no estoppel. The purchaser acts at his peril. Burleson v. Burleson, 28 Texas, 383. The general rule as applicable to this case has been tersely stated as follows: 'That when one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.' Love v. Barber, 17 Texas, 317.

"There is no question but that plaintiff knew all the facts that were known to Wortham or that were inferentially represented by the latter to be true. Plaintiff was living with Johnson, and they both rode over to Wortham's house to see him about the proposed exchange of lands between him and Johnson; he heard the parol agreement and knew all about it; he knew that the land was the homestead of Wortham and wife; that it could not be conveyed without her consent; that the parol contract was not binding and could not be enforced as it then stood—that is, he would be presumed to know such legal effect; he knew all about the transaction at least as well or better than Wortham because it is shown that the latter was illiterate, not able to read and write. In such case we can not see where the elements of estoppel are. Plaintiff knew all that was to be known at that time, and that was enough to cause him as a reasonably prudent man to see that legal transfers were made of the property so as to vest in him a legal title. No one was legally bound by what had transpired in his presence, and when he acted upon it, as he says, he took the risks incident to the then condition of things. What defendant said to him by way of permission to purchase from Johnson was of no consequence, he himself being in full possession of all the facts which should have advised him that he could not then obtain a title from Johnson. He was not misled, and it would be no fraud upon him to adjudge the title in the parties now as it stood then. Watson v. Hewitt, 45 Texas, 472; Scoby v. Sweatt, 28 Texas, 713.''

Under the facts certified we do not think that Lesh was estopped to assert title to said lease. Davis v. Allison, *supra;* Wortham v. Thompson, *supra;* Cauble v. Worsham, 96 Texas, 86, 97 Am. St., 871, 70 S. W., 737; McLemore v. Bickerstaff, 179 S. W., 536, 538-9 (writ refused); Lindley v. Lindley, 178 S. W., 782, 784.

We include the answer to question 1-(b) in our answer to question 3 so propounded and answer said question 3 as follows:—

3.    The facts pleaded and proved as shown by said certificate show as a matter of law that Lesh and his associates are not estopped to assert title to the lease in question.

We do not think that the facts certified show an abandonment of his contract by Lesh. He never surrendered it for cancellation. He never took back his check. He was relying on his contract as a basis for receiving $14,000.00 out of the proposed sale of the lease to Priddy if such sale were consummated. Moore exceeded his authority in closing the contract with Priddy at the time and in the terms he did close it. Lesh promptly disaffirmed Moore's acts in the premises, complied with the terms of his contract and demanded an assignment of the lease as stipulated therein.

We answer the fourth question propounded as follows:—

4. The facts certified do not show that the transaction between Lesh and Moore as Lesh's agent and also as president of the Godley Oil & Gas Company on the one hand, and W. M. Priddy on the other, in substituting the contract of Priddy for that of Lesh constitutes a rescission and abandonment of the contract of April 12, 1919, between Lesh and Moore as president of the Godley Oil & Gas Company.

Since Moore exceeded his authority in closing the contract with Priddy at the time and upon the terms he did close it, and since Lesh promptly repudiated his acts in the premises, and was therefore not bound thereby in any event, it becomes unnecessary to answer the fifth question propounded.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

C. M. CURETON,
Chief Justice