ACCEPTED
12-14-00288-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/6/2015 3:00:15 PM
CATHY LUSK
CLERK

ORAL ARGUMENT REQUESTED

## No. 12-14-00288-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

8/6/2015 3:00:15 PM
CATHY S. LUSK
Clerk

In the Twelfth Court of Appeals
Tyler, Texas

**J. MARK SWINNEA,**

*Appellant,*

**V.**

**ERI CONSULTING ENGINEERS, INC.
AND LARRY SNODGRASS,**

*Appellees.*

Appealed from the 114th Judicial District Court
Smith County, Texas

## APPELLEES' BRIEF

Mike A. Hatchell
State Bar No. 09219000
LOCKE LORD, LLP
600Congress Ave.
Austin, Texas 78701
Tel: (512) 305-4752
Fax: (512) 305-4800
mahatchell@lockelord.com

Deborah Race
State Bar No. 16448700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
drace@icklaw.com

# TABLE OF CONTENTS

Table of Contents. .................................................................................................. ii

Index of Authorities ..............................................................................................iv

Statement Regarding Oral Argument ................................................................. vii

Introduction ............................................................................................................1

Rejoinder to Swinnea's Statement of Facts ..........................................................3

Summary of the Argument.....................................................................................6

Argument and Authorities....................................................................................11

    I.     The disgorgement remedy protects fiducial relationships.
          It is not "punitive damages," nor does it require actual
          damages or a windfall to plaintiff.....................................................11

         A.      Disgorgement is not punitive damages..............................13

         B.      Actual Damages are not required........................................14

         C.      Disgorgement does not need to remedy a "windfall".........16

         D.      Disgorgement is not double recovery.................................17

         E.      Disgorgement of lease payment was appropriate...............18

    II.    This court has already held there is no statutory constraint
          on punitive damages...................................................................20

    III.   There is nothing to remand……………………………………….21

    IV.   The punitive damages pass constitutional muster..........................25

ii

   (i)  Ratio......................................................................26

   (ii)  Reprehensibility...................................................28

   (iii)  Statutory penalties...............................................30

 V. Snodgrass is entitled to recover.......................................30

 VI. Swinnea waived the attorney's fee claim, but it is meritless in any event........................................................32

Conclusion and Prayer for Relief.....................................................33

Certificate of Compliance ..............................................................35

Certificate of Service…..................................................................36

iii

# INDEX OF AUTHORITIES

## CASES

*Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908
(Tex. 1981) ...............................................................................9, 24, 25, 26

*Bennett v. Reynolds,* 315 S.W.3d 867,
(Tex.2010) .........................................................................................29

*BMW of North America, Inc. v. Gore*, 517 U.S. 559,
116 S.Ct. 1589, 134 L.Ed. 2d 809 (1996) ...................................26, 27, 28

*Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.*,
747 S.W.2d 785 (Tex. 1988) ...................................................................33

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) ...........................7, 13, 14, 15, 18, 23

*Cooper Industries v. Leatherman Tool Group, Inc.*,
532 U.S. 424 (2001) ..........................................................................23, 26

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867
(Tex. 2010) ................ 1, 2, 3, 7, 11, 13, 16, 18, 19, 23, 24, 29, 30, 32, 33, 34

*Gotham Ins. Co. v. Warren E&P, Inc.*,
455 S.W.3d 558 (Tex. 2014) ...........................................................21, 25

*Green v. Priddy*, 112 Tex. 567,
250 S.W. 656 (Tex. 1923) ....................................................................21

*Hudson v. Wakefield*, 711 S.W.2d 628 (Tex. 1986) .................................................33

*Int'l Bankers Life Ins. Co. v. Holloway,*
368 S.W.2d 567 (Tex. 1963) ..................................................................27

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
138 Tex. 565, 160 S.W.2d 509 (Tex. 1942) ...............................15

*Lairsen v. Slutzky*, 80 S.W.3d 121
(Tex.App.—Austin 2000, pet. denied) .......................................32

*In re Longview Energy Co.*, ___ S.W.3d ___,
2015 WL 2148353 (Tex. 2015) ..........................................13

*McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871
(Tex. App. – Dallas 2014, pet. denied) .......................................18

*McGaillard v. Kuhlmann,* 722 S.W.2d 694 (Tex. 1986) .........................................4

*Russell v. Truitt,* 554 S.W.2d 948
(Tex. Civ. App. – Fort Worth  1977, writ dism'd.) ...................................27

*Saden v. Smith*, 415 S.W.3d 450 (Tex. App.—Houston [1st Dist
2013, pet. denied) .................................................................18

*State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408,
123 S.Ct. 1513, 155 L.Ed. 2d 585 (2003) ......................................27, 28, 29

*Swinnea v. ERI Consulting Engineers, Inc.*, 236 S.W.3d 825
(Tex. App.–Tyler 2007, reversed, 318 S.W.3d 867) ..............................16, 32

*Swinnea v. ERI. Consulting Eng'rs, Inc.*, 364 S.W.3d 321
(Tex.App. – Tyler 2012, pet. denied) .................... 1, 9, 20, 22, 24, 25, 29, 34

*U.S. Commodity Futures Trading Com'n v. U.S. Bank, N.A.,*
13-CV-2041-LRR, 2013 WL 5944179 (N.D. Iowa Nov. 5, 2013).............. 13

**RULES**

Tex.R.App.P. 33.127.................................................................................32

**STATUTES AND CODES**

Tex.Civ.Prac. & Rem.Code Ann. § 41.008(c) ...................................7, 20

**OTHER AUTHORITIES**

Berra, Yogi. *The Yogi Book*. New York:
      Workman Publ. Co., 1998, p. 9.  ...............................................................1

Restatement (Third) of Unfair Competition §45 .......................................14

## STATEMENT REGARDING ORAL ARGUMENT

Swinnea has requested oral argument and Snodgrass and ERI would request same if this court is inclined to grant Swinnea's request. However, candidly, Snodgrass and ERI do not believe oral argument will provide much beyond the briefing in this case since the court is fully aware of the underlying facts, has already issued two opinions in the case, and understands the matter remanded.

## INTRODUCTION

In the words of Yogi Berra, it's "*deja vu* all over again."[1] Swinnea's third appearance in this court gives new dimension to the phrase "another bite at the apple." The first apple was a bitter one for Swinnea. He wants a new one. But the principal arguments in his breathless Appellant's Brief were foreclosed by the Texas Supreme Court five years ago in *ERI Consulting Eng'rs, Inc., et al v. Swinnea,* 318 S.W.3d 367, 875 (Tex. 2010) ("*Swinnea I*"), or by this court three years ago in *Swinnea v. ERI. Consulting Eng'rs, Inc. et al*, 364 S.W.3d 321(Tex.App. – Tyler 2012, pet. denied). ("*Swinnea II*").

The legitimate issues in the present appeal are not nearly as broad as Swinnea argues. The limited remand to the trial court from which this appeal emanates was for one purpose only – to make and implement findings on the disgorgement factors identified by the supreme court in *Swinnea I,* 318 S.W.3d at 875. On remand, the trial court made copious findings on each of the factors the supreme court identified. All findings were devastating to Swinnea and fully supported every penny of the disgorged sums. His brief challenges *none* of those findings as without support in the evidence. The trial court declined Swinnea's invitation to try liability all over again, following to the letter this court's

---

[1] Berra, Yogi. The Yogi Book. New York: Workman Publ. Co., 1998, p. 9.

1

instructions that the trial court "review ... *its forfeiture award* in light of the principles discussed in the supreme court's opinion." *Id. at 425 (emphasis added).*

Although this appeal should be about the sufficiency of the supplemental findings, Swinnea makes no such argument and proceeds undaunted by that fact. Ignoring two prior appellate court opinions that were solely about how much he must pay following his concession of fraudulent breach of fiduciary duty, he uses the outcome of the limited remand, instead, as a platform to start all over again, boldly proclaiming in this court that he now deserves a take-nothing judgment (AptBr: 6-11.)

● despite his concession seven years ago that he breached a fiduciary duty through fraudulent inducement (pointedly noted [twice] by the supreme court in *Swinnea I*, 318 S.W.3d at 872, 880, fn. 11),

● despite the trial court's unchallenged finding that his "objective was the financial destruction of ERI and Larry Snodgrass so that .. [he] .. could take advantage thereof for his own benefit" (FOF #5c at 2CR293),

● despite the supreme court's finding that equity permitted disgorgement of the fraudulently induced contractual consideration,

● despite that court's finding that "ERI proved lost profit damages" (*Swinnea I* at 878), resulting from Swinnea's fraudulent breach, and

2

● **despite** his failure to challenge both the sufficiency of evidence on the disgorgement elements or their efficacy to support the disgorgement.

Describing his fraudulent scheme to drive ERI out of business as just "garden variety" fraud (AptBr:29), he now seeks total exoneration on the theory that, in reality, his fraud caused ERI to "prosper" (AptBr:35), even though the supreme court held "the evidence is legally sufficient to establish a straightforward link between Swinnea's breach and the loss of profits by ERI." *Swinnea I,* at 878.

The circuitous machinations by which Swinnea seeks to undo all the findings and holdings decreeing his liability depend on his convincing this court of two things:

- That the disgorgement authorized by the Texas Supreme Court is actually "punitive damages" and must be further analyzed as such.

- That a *de novo* review of all aspects of punitive damages (including issues this court ruled on specifically in its last opinion) is appropriate despite the fact that this is an appeal from a remand limited to the disgorgement remedy.

Neither is a proper foundation for this appeal.

### REJOINDER TO SWINNEA'S STATEMENT OF FACTS

The supreme court's opinion contains an accurate statement of the pertinent facts that support the judgment. *Swinnea I,* 318 S.W.3d 870-872. The sugar-coated fact statement in Appellant's Brief (AptBr:4-6) self-evidently seeks to curry sympathy from the court in defiance of the standard of review by indulging

3

inferences *contrary* to both sets of findings. Swinnea's assertion that his fraudulent breach of fiduciary duty actually led ERI into "post-buyout prosperity" (AptBr:6) mocks the original findings and the findings on remand, as seen in the following:

> Swinnea's wrongful conduct was not an isolated violation but consisted of a continuing, persistent, calculated course of conduct which began before the buyout and continued thereafter until his employment was terminated in June, 2004. (FOF #1d at 3CR395.)

> J. Mark Swinnea's wrongful conduct consisted of a multifaceted plot designed to cause injury to Larry Snodgrass and ERI when they were most vulnerable as a result of their extraordinary financial commitment of cash and property for the buyout. (FOF #1e at 3CR395-96.)

> Swinnea's wrongful conduct was committed in bad faith, intentionally, knowingly, willfully and with malice to cause injury to ERI and Mr. Snodgrass and to unfairly and unjustly gain benefits to himself at their expense. (FOF #2 at 3CR396.)

> The targets of J. Mark Swinnea's flagrant breaches were the core elements of ERI, which gave the transaction value and for which ERI and Larry Snodgrass paid dearly. (FOF #4c at 3CR397.)

> Swinnea's objective was the financial destruction of ERI and Larry Snodgrass so that J. Mark Swinnea could take advantage thereof for his own benefit. (FOF #5c at 3CR397.)

Both sets of findings are binding in this court, because they have never been challenged. *McGaillard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). They destroy the core of this appeal

A prime example of how far afield this appeal wanders is Swinnea's argument that his deceit was actually a boon to ERI and Snodgrass that allowed

4

them to triple their investment. (AptBr:7-8.) The argument is rooted, not in the original appellate record, but, in the testimony of accountant, Nicholas Burkett, who testified for Swinnea at the hearing on remand. Burkett had not looked at any of the company records after 2004, and he had not seen the court's findings in 2005. (SH[2] 84.)

Swinnea's brief neglects to mention Burkett's testimony that (i) the non-competition clause fraudulently breached by Swinnea was an important factor in his valuation of the company (SH 89), and (ii) that Swinnea never told Burkett he violated that agreement (SH 85-86), or (iii) that Burkett was unaware that Swinnea had set up AQA and Brady in violation of his agreement (SH 88), or (iv) that Burkett was ignorant of the fact that Swinnea never intended to keep the promises and representations made to Snodgrass in the contracts. (SH 90 ll 13-19: "No he definitely never said that.") In the end, Burkett contradicted Swinnea's "prosperity" theme, by admitting there was no way to know how much money the company would have made had Swinnea done what he promised. (SH 93.)

Swinnea's willingness to sacrifice the standard of review to curry sympathy is bad enough, but, as the following discussion will show, the greater problem with this *post hoc* analysis is how irrelevant it is to the disgorgement remedy that is the only legitimate issue in this limited appeal.

---

[2] The record contains the Reporter's Record from the first trial as Volumes 1-7, as well as the Reporter's Record from the Status Hearing which is also labeled as Volume 1. As a result, there would be two RR 1's, so for clarity, the Status Hearing will be referred to as SH.

## SUMMARY OF THE ARGUMENT

This appeal is from a limited remand to the trial court to enter findings on certain equitable elements underlying the disgorgement. Those findings were made in detail. The findings embraced each element identified by the supreme court for the trial court to consider.

This appeal should be just about the sufficiency of the evidence to support those findings and their efficacy to support disgorgement. But Swinnea challenges none of them as without support in the evidence. Instead, he uses the limited remand as a platform to start all over again and claim he is entitled to a take-nothing judgment, despite the supreme court's and this court's prior opinions being only about *how much* he must pay, not whether he should pay at all.

The bulk of the issues assigned and discussed in Swinnea's brief are thus not properly within the scope of any legitimate appeal from the findings on remand. Indeed, virtually all of the legal issues he discussed were decided five years ago in the supreme court's opinion. None of the points have an iota of merit. Swinnea's delaying tactics in this decade-old case can and should be swept aside with a broad brush.

**Disgorgement is not punitive damages:** Most of Swinnea's arguments depend on the fallacious premise that the disgorgement award is punitive damages and thus should be added to the actual punitive damages and re-analyzed as such.

The supreme court made clear in *Burrow v. Arce,* 997 S.W.2d 229, 240 (1999) that disgorgement is not punitive damages, but is an equitable remedy to redress harm to or destruction of a fiducial relationship. Indeed, the supreme court's opinion in this case described the sums disgorged as "non-exemplary damages." *Swinnea I,* 318 S.W.3d at 872. Thus, because disgorged sums are not the equivalent of punitive damages, disgorgement can be recovered along with punitive damages and there is no double recovery. Also, in *Burrow,* the supreme court squarely confronted *and rejected* Swinnea's resurrected arguments that actual damages are a necessary prerequisite to disgorgement or that the remedy is limited to redressing a windfall to plaintiff.

The arguments at pp. 11-17 of Swinnea's brief thus collapse of their own weight because they depend on the long-rejected premise that disgorgement and punitive damages are the same and subject to the same standards of review.

**Statutory Limits on punitive damages have been considered:** In its previous opinion, this court fully considered the statutory limits on punitive damages in Sec. 41.008(c) of the Civil Practice and Remedies Code and held that the trial court's original and unchallenged findings sufficiently established an exception to the cap. Swinnea took that ruling to the Texas Supreme Court, which surely would have reversed the holding if it were wrong. Now standing as the law of the case, Swinnea offers no reason to revisit the issue.

7

**There is nothing to remand:** If he cannot get rendition in his favor, one of Swinnea's alternate strategies (as shown at pp. 18, 21, 24, 41 is brief) is to get the case remanded to the trial court to begin a second decade of litigation, despite his admission eight years ago that he is guilty of breach of fiduciary duty through fraudulent inducement. There is nothing to remand for three reasons:

● The remand is premised, again, on the theory that disgorgement is punitive damages and remand to the trial court is required, so the argument goes, because the ratio of punitive to actual damages has "changed" dramatically and the supreme court "reconstituted" disgorgement as punitive damages. The argument dies on that false premise.

● There is nothing for the trial court to do on remand. The remand was limited to entering findings on the disgorgement elements. The trial court did so. Swinnea does not challenge those findings or their efficacy to support the disgorgement. The application of state or federal legal principles to review an award of punitive damages for excessiveness involves an application of legal principles to the unchallenged facts. This court is fully capable of doing that and, in fact, has done so already.

● On remand from the supreme court, this court fully considered the sufficiency of the evidence to support punitive damages under the so-called "*Kraus* factors" and affirmed the award. That put an end to the matter, because the court's

application of the "*Kraus* factors" sufficiently encompasses both Texas standards and federal due process standards for testing awards of punitive damages.

**Federal due process standards are satisfied:** Even if Swinnea were correct in his disrespectful accusation that this court never lifted a finger to consider due process, but engaged in *ad hoc, sua sponte* reasoning (AptBr:19)**,** Swinnea's due process argument is doomed to failure, because he addresses only one of the United States Supreme Court's standards, and he proceeds under that standard only on a false legal premise.

Those federal standards are (i) the reprehensibility of defendant's conduct, (ii) the ratio of punitive to actual damages, and (iii) comparable criminal penalties.

Reprehensibility is the most important principle, but Swinnea largely ignores it, calling his misdeed "garden variety" fraud, despite the trial court's unchallenged original findings and remand findings of egregiously reprehensible fraud committed by a fiduciary with the specific intent to injure Mr. Snodgrass and ruin ERI to serve Swinnea's own greed. As this court noted in its last opinion, Swinnea's conduct is about as reprehensible as it gets. *Swinnea II,* 364 S.W.3d at 424.

Swinnea's arguments on the second element are premised on false ratios. Disgorged sums are not counted as punitive damages, but in fact can be counted as actual damages for ratio purposes, because Texas has long recognized that punitive

9

damages may be assessed even when the only relief is a form of disgorgement or forfeiture against a fiduciary or fraudfeasor, of which Swinnea is both. If the disgorged sums are counted, in this case, the ratio of punitive damages to actual damages is 1.01:1. If just the lost profits award (plus its prejudgment interest) is counted, the ratio is 3.75:1. Both ratios are within those Swinnea concedes satisfy federal due process guidelines. Indeed, given the degree of reprehensibility, much larger ratios would stand under both Texas and federal standards.

Finally, Swinnea waives the consideration of the third factor (comparable criminal penalties) by not briefing it.

**Swinnea has waived his standing challenge to Snodgrass's individual recovery:** In his first appeal to this court, Swinnea challenged Mr. Snodgrass's ability to recover individually. He makes the same argument again. This court held, and it is now the law of the case, that Swinnea's challenge was one of capacity, not standing, and Swinnea had waived the argument. *Swinnea v. ERI Consulting Eng'rs, Inc.* 236 S.W.3d 825, 833 (Tex.App. – Tyler 2007, reversed 318 S.W.3d 867 (Tex 2010). He cites no new law or change in the facts to justify revising the issue again.

**Plaintiffs are entitled to attorney's fees, but the argument has been waived:** Swinnea's belated argument that plaintiffs cannot recover attorney's fees has not been raised before and has been waived. However, attorney's fees are

10

recoverable, because the supreme court held that the lost profits damages were recoverable under all theories, including breach of contract. Attorney's fees are recoverable for breach of contract.

I. **The disgorgement remedy protects fiducial relationships. It is not "punitive damages," nor does it require actual damages or a windfall to plaintiff."**

Swinnea's argument that disgorgement cannot be imposed as a remedy under the unchallenged findings (AptBr:10-17) was put to rest in *Swinnea I* when the supreme court held:

> We hold that where willful actions constituting breach of fiduciary duty also amount to fraudulent inducement, the contractual consideration received by the fiduciary is recoverable in equity regardless of whether actual damages are proven, subject to certain limiting principles set out below.

*Swinnea I,* 318 S.W.3d at 873. In choosing (nearly ten years ago), not to challenge any of the trial court's original findings, Swinnea calculatedly admitted he is guilty of "willful actions constituting breach of fiduciary duty .. [that amounted to] .. fraudulent inducement." *Id.*

The only condition to recovery of the disgorged sums imposed by the supreme court was the trial court's need to consider, and make findings on, certain equitable elements defined by the court to justify disgorgement. The trial court

11

made those findings (in extraordinary detail) and, again, Swinnea does not challenge them.

The mindset by which Swinnea believes this court can set aside disgorgement without his challenging the trial court's findings is, charitably, puzzling. It seems to rest on three false premises: (i) that disgorgement is not available unless it remedies a "windfall" to Swinnea in the form of "restitutionary" money damages, but Swinnea reaped no "windfall," (ii) "the buyout did not cause any actual damages" (AptBr:16), therefore, (iii) the disgorged sums can only be punitive damages and must be analyzed only as such. (AptBr:10-17.) It is only through a complex interweaving of those theories that Swinnea can make arguments like:

● disgorgement "is a species of punitive damages," and here it is "100% a second punitive-damage award" (AptBr:12), or "when a court orders a defendant to disgorge more than his net profits [*i.e.,* actual damages], the disgorgement award becomes a punitive damage award" (AptBr:11);

● "the disgorgement remedy seeks to neutralize windfalls." (AptBr: 11);

● disgorgement is improper "[b]ecause no actual damages have been recovered." *(*AptBr*:*15).

In other words, Swinnea asks the court to recharacterize disgorgement as punitive damages, and review the remedy under *different* criteria than the supreme

12

court imposed. The foundation for these arguments was rejected as early as 1942, and just making them here is a cynical affront to the "law of the case" from *Swinnea I*. Every premise that supports those arguments has been considered and rejected by our supreme court in the past, even as late as this very case:

**A. Disgorgement is not punitive damages**: In *Swinnea I*, Justice Green described the disgorged sums as among the "non-exemplary damages awarded by the trial court." 318 S.W.3d at 872. That echoes the earlier characterization in *Burrow v. Arce:*

> The Attorneys [whose fees were disgorged] point out that one measure of whether punitive damages are excessive is the amount of actual damages awarded. While this is true, forfeiture of an agent's compensation is not mainly compensatory, …*nor is it mainly punitive. Forfeiture may, of course, have a punitive effect, but that is not the focus of the remedy. Rather, the central purpose of the remedy is to protect relationships of trust from an agent's disloyalty or other misconduct.* Appropriate application of the remedy cannot therefore be measured by a principal's actual damages. An agent's breach of fiduciary duty should be deterred even when the principal is not damaged.

*Burrow,* 997 S.W.2d at 240 (emphasis added). This was reiterated by the Chief Justice on May 8, 2015, in *In re Longview Energy Co.,* ___ S.W.3d ___, 2015 WL 2148353, *5 (Tex. 2015). This description of the remedy's purpose proves it is not "restitution" or "restitutionary." (AptBr:11-16.) See *U.S. Commodity Futures Trading Com'n v. U.S. Bank, N.A.*, 13-CV-2041-LRR, 2013 WL 5944179, at *16 (N.D. Iowa Nov. 5, 2013 (Disgorgement does not aim to compensate the victims of

13

the wrongful acts, as restitution does.... [Disgorgement] is not restitution"). Swinnea's argument thus collapses with its critical fulcrum point.[3]

**B. Actual Damages are not required**: Swinnea's resurrection of his argument that "actual damages" are a predicate to disgorgement (*e.g.* AptBr:15) is seventy-three years too late.

In 1999, the lawyers representing Burrow argued that "actual damages" were an absolute prerequisite to disgorgement. To that end, their attorney's ultimately stricken affidavit speculatively asserted that plaintiffs sustained *no damages* from the attorneys' breach of fiduciary duty, because

> [e]ach and all of the Plaintiffs were reasonably and fairly compensated by way of settlement for those elements of damages that were available to them as Plaintiffs.

*Burrow,* 997 S.W.2d. at 235.

The supreme court rejected the notion that such damages were a necessary predicate to disgorgement:

> Fee forfeiture for attorney misconduct is not a windfall to the client. An attorney's compensation is for loyalty as well as services, and his failure to provide either impairs his right to compensation. While a client's motives may be opportunistic and his claims meritless, the better

---

[3] The extent to which Swinnea's arguments struggle to find any support is seen in the citation to RESTATEMENT (THIRD) OF UNFAIR COMPETITION §45, which applies to "Monetary Relief: Appropriation of Trade Secrets." Swinnea cites a comment to a section on the relationship between legal and equitable remedies. The comment reads in part, "The traditional measure of damages awards relief measured by the loss to the plaintiff resulting from the appropriation. The nature of the competitive marketplace, however, often makes it difficult for a plaintiff to prove lost sales or other losses attributable to the appropriation of a trade-secret. Similarly, the value of a trade secret that has been destroyed through public disclosure is often speculative. The remedy of restitution is thus an important form of monetary relief in trade secret cases." RESTATEMENT 3RD OF UNFAIR COMPETITION §45, cmt. c. This is not a trade secrets case. The comment has no applicability here. The authority is part of Swinnea's grand scheme to conflate disgorgement principles with restitution. This is not a restitution case either.

protection is not a prerequisite of actual damages but the trial court's discretion to refuse to afford claimants who are seeking to take unfair advantage of their former attorneys the equitable remedy of forfeiture.

\*\*\*\*\*

Appropriate application of the remedy cannot therefore be measured by a principal's actual damages. An agent's breach of fiduciary duty should be deterred even when the principal is not damaged.

*Burrow*, 997 S.W.2d at 240.

The court traced its holding back to the 1942 decision in *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, another corporate sales contract case, where a disloyal employee violated fiduciary duties in the course of negotiating a sale of his employer's contract rights by accepting a bribe from the buyer. The employee sought exoneration for his secret commission with the same "no harm, no foul" argument. The court rejected it on core policy grounds:

> It is beside the point for either Turner [the employee] or Corbett [the purchaser] to say that Kinzbach suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired.

138 Tex. 565, 573-574, 160 S.W.2d 509, 514 (Tex. 1942).

On the limited remand ordered in this case, the trial court made that exact finding: "Disgorgement of the ill-gotten profits and gains obtained by J. Mark

15

Swinnea is designed to protect the trust relationship and remediate the breach of that trust." (3CR:398.)

The supreme court's reversal in *Swinnea I* put to rest Swinnea's "actual damages" argument, and it is now the law of the case. Swinnea offers no explanation why he is entitled to make the argument again.

***C. Disgorgement does not need to remedy a "windfall:"*** Swinnea made his "windfall" argument to this court the first time the case was appealed:

> Appellants contend that the trial court misapplied the rule for disgorging windfalls. They argue that there is no evidence that Swinnea profited beyond what would have been expected at the time of the transaction or that any profit was made illicitly at ERI's expense.

*Swinnea*, 236 S.W.3d at 841.

> The supreme court put the argument to rest in *Swinnea 1* when it held:

> where willful actions constituting breach of fiduciary duty also amount to fraudulent inducement, the contractual consideration received by the fiduciary is recoverable in equity regardless of whether actual damages are proven, subject to certain limiting principles set out below.

*Swinnea I,* 318 S.W.3d at 873. The court also held that, under the facts of the case, "exemplary damages may be recoverable" concurrent with disgorgement. *Id*. at 880.

On the limited remand, the trial court made findings on all the elements identified by the supreme court, including the following relating to the disgorgement remedy:

● "The [separate] punitive damages awarded are not designed to compensate Mr. Snodgrass or ERI for their loss, but to punish J. Mark Swinnea and deter and serve as an example to others from engaging in this type of egregious conduct." (FOF #6e at 3CR398.)

●: "The award of punitive damages, without forfeiture, is inadequate to remediate under the circumstances in this case." *(FOF #6f at 3CR398.)*

● "An award of merely actual damages and punitive damages, based on the circumstances of this case, is inadequate." (FOF #6h at 3CR398.)

Those are just examples. All the unchallenged findings end Swinnea's challenge to disgorgement.

***D. Disgorgement is not double recovery:*** Swinnea just repeats his erroneous premise when he argues that "[a] court may award one punitive damage recovery per injury. *** As a result, disgorgement may not be awarded in addition to punitive damages when to do so results in double punishment." (AptBr:16.)

This ignores, again, that (i) the remedy is not "mainly punitive," *Swinnea I,* 318 S.W.3d at 873-74, and (ii) that the remedy redresses a separate injury to the relationship, so it cannot be a double recovery.

17

One Texas court recently rejected a similar argument. In *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 905 (Tex. App.—Dallas 2014, pet. denied), the court wrote, "The disgorgement award here does not result in double-recovery problem. Equitable disgorgement is distinct from an award of actual damages in that the disgorgement award 'serves a separate function of protecting fiduciary relationships.' *Saden v. Smith*, 415 S.W.3d 450, 469 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 874 (Tex. 2010)); *see also Burrow*, 997 S.W.2d at 238 (purpose of disgorgement remedy is to protect relationships of trust by discouraging agent's disloyalty or other misconduct). And because equitable disgorgement and actual damages are intended to address separate and distinct injuries, the one-satisfaction rule does not preclude the recovery of both. *Saden*, 415 S.W.3d at 469."

**E. Disgorgement of lease payment was appropriate:** Swinnea only half-heartedly argues that this disgorgement award should not stand because it

> confiscates 100% of the rentals ERI paid Swinnea to lease office space, even though half of this sum is rentals earned on the 50% interest Swinnea acquired in the leased premises years before the events at issue.

(AptBr:25.)

This argument, too, ignores the nature of the remedy, the supreme court's pronouncement on its breadth, and the trial court's findings.

18

First, the trial court expressly found that it was fair, equitable and just for Swinnea to disgorge himself of the $3,600 a month lease payments on the Malmeba building. (FOF #9 at 3CR:399.)

Second, the supreme court confirmed that the lease was part of the contractual consideration. *Swinnea I,* 318 S.W.3d at 876.

Third, the supreme court held that, "even if a fiduciary does not obtain a benefit from a third party by violating his duty, a fiduciary may be required to forfeit the right to compensation for the fiduciary's work," and it then concluded that "The same principles apply to circumstances where a fiduciary takes advantage of his position of trust to induce a principal to enter into a contract. The remedy of forfeiture is necessary to prevent such abuses of trust, regardless of proof of actual damages." *Id*. at 873.

*To sum up …*

All of Swinnea's arguments on disgorgement deny the fundamental basis and purpose for the remedy, as established by the Texas Supreme Court. There is no longer room to debate the issue. Swinnea's *de novo* attacks on established precedent appear to embrace frivolity for the purpose of delay. They should be dispatched swiftly.

**II.** **This court has already held there is no statutory constraint on punitive damages.**

The argument at pp. 25-32 of Swinnea's brief seeking to "cap" punitive damages under Tex.Civ.Prac. & Rem.Code Ann. § 41.008(c) is, in effect, a motion for rehearing of *Swinnea II*, which is more than three years too late. In its last decision, this court squarely confronted the issue of the statutory cap and held:

> The trial court found that Swinnea made false representations of past and existing material facts to ERI and Snodgrass, which were relied on by them, and which were made for the purpose of inducing them to enter the buyout. The court also found that Swinnea made the false representations with actual awareness of their falsity and with the intent to cause damage to ERI and Snodgrass. Accordingly, the trial court found the type of conduct referred to in Section 41.008(c)(11) and therefore the statutory cap on exemplary damages does not apply. Tex. Civ. Prac. & Rem.Code Ann. § 41.008(c). Because the statutory cap does not apply and the evidence is sufficient to support the amount of exemplary damages awarded, we overrule Swinnea's fourth issue.

*Swinnea II,* 364 S.W.3d at 424.

An attack on that holding was the principal focus of Swinnea's petition for review. In Sections II-III of that petition, Swinnea devoted six pages to the same argument made here. Surely the supreme court would have granted the petition had it found error in that holding, because it would significantly affect the punitive damages. The rule in this situation is:

> Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case.

20

*Gotham Ins. Co. v. Warren E&P, Inc.*, 455 S.W.3d 558, 562 n.8 (Tex. 2014). Absent any change in the facts or prevailing law, the only "circumstance" justifying a second look at an already decided issue is that the ruling is "clearly erroneous." *See eg, Green v. Priddy,* 112 Tex. 567, 577, 250 S.W. 656, 660 (Tex. 1923).

In the face of the supreme court's tacit approval of that case-determinative issue, Swinnea is hard pressed to identify any circumstances to justify revisiting an issue that court was untroubled by. Certainly, nothing that occurred in the remand to the trial court justifies a second look. That remand was limited to the findings on the disgorgement elements. It does not provide a new platform *per se* to review a separate statutory matter that has once been decided by this court and reviewed by a court of last resort.

## III.    There is nothing to remand.

The confusing argument under Swinnea's §IIIA (there is no IIIB) is a classic tangled web. (AptBr:17-24.) The purpose of the argument is seen in its last sentence where Swinnea says the "punitive awards must be vacated *and remanded* for a proper analysis." (AptBr:24.) The gambit very clearly aims to consign this now-decade-old litigation to another decade of endless trials and appeals where Swinnea apparently hopes attrition from costly litigation will give him the victory he cannot accomplish legally.

Swinnea's *legal* premise for a remand is found in this argument:

> Because the disgorgement award is punitive and not restitution, it (together with any award of express punitive damages to Snodgrass) must be analyzed by the trial court as an initial matter and this Court for constitutional excessiveness and compliance with the *Kraus* factors.

(AptBr:18.)

His *factual* premises for the remand is that

● there has been "a five-fold reduction in what the trial court perceived as actual damages when setting the punishment,"

● "the actual damages have been reduced by 80 percent," and

● "[w]hen actual damages have been reduced to only about 15% of their former amount, it should suggest taking a fresh look at the amount of punitive damages." (AptBr:21.)

This court bears its share of the blame because, according to Swinnea, Justice Griffith's opinion in *Swinnea II* "made no attempt at analysis" of "constitutional due-process," "invoked [an]impermissible, *sua sponte* ground to avoid the statutory cap," "failed to acknowledge the effect of the lost-profits remittitur," and "precluded the trial court from conducting any punitive-damage analysis in light of the revised actual damages and the remanded disgorgement." (AptBr:19-20.)

The logic connecting those failures with a need to remand is not clear. That analytical gap exposes numerous fallacies in the argument:

First, and foremost, Swinnea's principal (if not only) reason for the remand is the premise that the ratio of actual to punitive damages has "changed dramatically" due to the "supreme court's reconstitution of the disgorgement as other than actual damages." (AptBr:19, 22.) The premise is utterly false. As we showed above, the supreme court has made clear that the disgorgement sums are *not* "mainly punitive." *Burrow,* 997 S.W.2d 240. The entire argument collapses for that reason alone.

Second, there is nothing for the trial court to do. The trial court has exercised its fact-finding function – both at the original trial and on remand. The facts found are unchallenged. The application of punitive damages guidelines to those findings to test excessiveness of punitive damages is a *de novo* legal exercise in which appellate courts have the last word. *See Cooper Industries v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 432, 437 (2001) (level of punitive damages "is not really a 'fact' 'tried' by the jury.") The supreme court understood that principle. In remanding *Swinnea I,* it said: "it is now proper for the *courts* below to consider any remaining issues concerning the trial court's initial award of $1 million in punitive damages…" *Swinnea I,* 318 S.W.2d at 880. The plural "courts" indicates *this* court's primary role in performing the analysis.

23

Third, this court has already done the analysis under the *Kraus* factors. Under the heading "Exemplary Damages," this court devoted an entire section of its opinion on remand from the supreme court to testing the amount of the punitive damages against applicable standards. The court concluded:

> After reviewing the entire record, applying the *Kraus* factors, and considering the amount of actual damages properly recoverable, we conclude that exemplary damages in the amount of $1,000,000.00 is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

*Swinnea II,* 364 S.W.3d at 424, citing *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). The trial court noted on remand from this court that it would not conduct the due process analysis as urged by Swinnea because the "issue relating to the amount of punitive damages and the propriety of that award has been settled by the Twelfth Court of Appeals." (2CR285.)

Swinnea wants a remand to the trial court, not because he didn't receive a full analysis from this court the last time, but because of his dissatisfaction with the analysis he got -- which he impugns in particularly caustic terms:

> "Rather than consider the limits due process places upon a defendant's punishment, once the supreme court had reversed in part on other grounds, Justice Griffith's opinion perfunctorily invoked *Alamo Natl' Bank v. Kraus* with no real attempt at analysis, solely in connection with the express punitive award to Snodgrass."

(AptBr: 19.)

24

This criticism again overlooks the important principle that, under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case. *Gotham Ins. Co.,* 455 S.W.3d at 562 n.8.

Because this court's opinion in *Swinnea II* found the maximum amount of actual damages and suggested a remittitur, it clearly had the remitted amount of lost profits in mind in its *Kraus*-factors analysis. Other than the false notion that the supreme court "reconstituted" disgorgement as punitive damages, Swinnea offers no reason for this court (or the trial court) to apply the *Kraus* factors again, again, and again. (We discuss his separate constitutional due process complaint in the following section.

## IV. The punitive damages pass constitutional muster.

Swinnea insists that he has never received a separate analysis of punitive damages under the due process clause of the federal constitution. We disagree with his characterization that "no court has lifted a finger to consider whether the combined $1.72 million in punitive awards might be constitutionally excessive." (AptBr:19.) He received such a review from this court in *Swinnea II,* because the guidelines announced in *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981), individually applied by the court in that case closely match the United States Supreme Court guidelines.

Those federal criteria include: (1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Cooper Indus., Inc.,* 532 U.S. at 440, citing *BMW of North America v. Gore,* 517 U.S. 559, 574-575 (1996). "Reprehensibility" encompasses *Kraus's* "character of the conduct" and "degree of culpability;" the other two factors (ratio and statutory punishment) fit comfortably within *Kraus*'s "offense to a public sense of justice and propriety." *Kraus,* 616 S.W.2d at 910.

To stop the treadmill on which Swinnea wants to keep this case (hopefully), we offer the following purely constitutional analysis to put the matter to rest and demonstrate once and for all that federal due process principles confirm the punitive damages award.

**(i) Ratio:** Given the unchallenged findings, Swinnea understandably avoids "reprehensibility" and concentrates only on the ratio of punitive damages to actual damages. (AptBr: 32-33.)

The United States Supreme Court has instructed that, "because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those we have previously upheld may comport with due process where 'a

particularly egregious act has resulted in only a small amount of economic damages,' *Ibid*.[4]; *see also ibid*. (positing that a higher ratio might be necessary where 'the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine')." *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

Swinnea concedes the validity of a 4:1 ratio without realizing that the ratios here are below that.

(i) Texas has long recognized that exemplary damages may be recovered based on disgorged sums from "defaulting fiduciaries." *Int'l Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 584 (Tex. 1963); *Russell v. Truitt,* 554 S.W.2d 948, 955 (Tex. Civ. App. – Fort Worth 1977, writ dism'd.) Adding the disgorged sums of $720,700 to lost profits plus prejudgment interest of $267,000 yields a ratio punitive damages to actual damages of 1.01:1.

(ii) Using just the lost profits of $178,600 plus prejudgment interest in the sum of $88,370 yields a ratio of 3.75:1.

Both ratios are within the range Swinnea concedes is appropriate. Swinnea's argument that the ratio does not leave room for greater punishment in cases involving, among other things "financial ruin," ignores the unchallenged finding that Swinnea's "objective was the financial destruction of ERI and Larry

---

[4] Referring to *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).

Snodgrass so that .. [he] .. could take advantage thereof for his own benefit." (FOF # 5c at 3CR397.) This case thus justifies the extraordinary punishment.

**(ii) Reprehensibility:** Swinnea largely ignores the reprehensibility factor even though it is "the most important indicium of the reasonableness of a punitive damages award." *Gore*, 517 U.S. at 575.

The nonexclusive factors identified by the United States Supreme Court as indicative of the requisite reprehensibility include (i) that "the target of the conduct had financial vulnerability," (ii) "the conduct involved repeated actions," and (iii) the harm resulted from "intentional malice, trickery, or deceit," as opposed to "mere accident." *State Farm*, 538 U.S. at 419, see also *Gore*, 517 U.S. at 576–77. Those factors are supported in this case by numerous unchallenged findings:

(i) ERI and Snodgrass were financially vulnerable because, under the terms of the buyout, Swinnea – a prime producer of income for ERI – continued working for ERI as a fraudfeasor in sheep's clothing while his "objective was the financial destruction of ERI and Larry Snodgrass so that .. [he] .. could take advantage thereof for his own benefit." (FOF #5c at 3CR397.) His employment at ERI was a cover that allowed him to have "executed a scheme, taking advantage of his intimate knowledge of ERI and Snodgrass, which would jeopardize ERI and Larry Snodgrass of their major sources of revenue, expertise, longstanding client relationships and goodwill." (FOF #3e at 3CR396.)

28

(ii) Swinnea's fraud, deceit, and deception "continued after the buyout" (FOF #66 at 1CR83) and thus was repeated daily for years, until he was terminated.

(ii) Swinnea engaged in fraudulent breach of fiduciary duty by which he "willfully, maliciously and intentionally caused injury to" ERI and Snodgrass (FOF #'s57, 72, 74 at 1CR82-83); or, as this court noted in *Swinnea II,* Swinnea's conduct involved "dishonesty and deceit," "Swinnea acted in bad faith and with malice," and his "culpability was significant." *Swinnea II*, 364 S.W.3d at 423-424. All of Swinnea's wrongful conduct was done with "malice." (FOF #84 at 1CR84.)

Additionally, *Bennett v. Reynolds* recognizes that the *State Farm* factors are non-exclusive. *Bennett v. Reynolds,* 315 S.W.3d 867, 873-874 (Tex. 2010), so, it is appropriate to consider that Texas has a strong interest in protecting the integrity of fiducial relationships and good reason to administer strong medicine to actors, like Swinnea, who commit fraud *while acting as fiduciaries*. Indeed, *Swinnea I* justified disgorgement precisely because Swinnea's "willful actions constituting breach of fiduciary duty *also* amount to fraudulent inducement," and therefore, "the contractual consideration received by the fiduciary is recoverable in equity regardless of whether actual damages are proven." *Swinnea I*, 318 S.W.3d 873.

The unchallenged original and remand findings establish that Swinnea's conduct is about as reprehensible as it gets. Describing his conduct as "garden-

variety" fraud (AptBr:29) is an oxymoronic contradiction of terms. His statement that there is "no evidence of any specific desire to harm the plaintiff" (AptBr:34), cynically ignores the unchallenged findings to the contrary. The financial razzle-dazzle at pp. 32-36 seeking to minimize the nature of his acts, his malicious intent and the harm they caused, brazenly asks this court to abandon all tenets of principled appellate review and essentially review the case *de novo*.

**(iii) Statutory penalties:** Swinnea makes no argument on the statutory remedies element, so it is irrelevant.

Swinnea's argument on due process ignores two of the federal standards and bases the third on a false premise. To sustain such an attenuated, make-weight argument would itself be a denial of due process to plaintiffs.

## V. Snodgrass is entitled to recover.

Swinnea's first argument is that Snodgrass could not recover individually, because, as a corporate shareholder, he could not recover individually for a loss sustained by ERI. (AptBr:8.)

In this appeal, he phrases the argument a little differently, but it is essentially the same one that he made before that this court rejected. In the first appeal to this court, Swinnea argued "There is no basis for awarding Mr. Snodgrass any loss-of-income damages and such recovery should be eliminated from the judgment for the simple reason that if there was any loss of work, income, or profits, it was damage

solely to ERI, not Snodgrass." (AptBr[2006]30.) Swinnea also argued in that brief

that there was no evidence Snodgrass, as opposed to ERI, had paid any portion of

the upfront buyout money or that he had any standing to recover it. *Id*. at 33. His

legal argument was that, "Because a corporate director's fiduciary duty runs only

to the corporation, not to its individual shareholders, whether Mark Swinnea owed

ERI a fiduciary duty to disclose AQA's formation and Dawn's ownership in AQA,

it was not a duty owed to Snodgrass individually." *Id*. at 43.

Swinnea now argues that "[t]his court should have addressed Swinnea's

attacks on Snodgrass's standing to recover ERI's lost profits and punitive

damages." (AptBr:9.) This court did address that very argument. It found that

Swinnea's challenges raised issues of capacity, not standing, and were waived:

> The gist of Appellants' argument is that, because the transaction at issue was the repurchase by ERI of its own stock, and Snodgrass individually was not a party to the transaction, he cannot be entitled to win damages individually. This argument raises the issue of capacity, not standing."

This Court then concluded, "Appellants' answer does not raise the issue of

capacity, nor is it verified by affidavit. Appellants have waived the right to raise

the issue of Snograss's capacity. We overrule Appellant's second issue.

*Swinnea*[2007], 236 S.W.3d at 833.

Swinnea's present argument does not address the prior waiver holding. He

also does not address (or challenge) the trial court's and the supreme court's

31

holding that "ERI and Snodgrass" were both injured by Swinnea's conduct. 1CR82-83; 2CR293; 3CR396; *Swinnea I* 318 S.W.3d at 880. The argument is meritless.

**VI.    Swinnea waived the attorney's fee claim, but it is meritless in any event.**

The half-page argument contending that appellees are not entitled to attorney's fees cannot be taken seriously – for several reasons:

First, the argument has been waived. Appellees cannot find where this complaint was raised to either the trial court or this court in prior proceedings. Arguing it now comes too late. *Tex.R.App.P.* 33.1; *see also Lairsen v. Slutzky*, 80 S.W.3d 121, 130 (Tex.App.—Austin 2000, pet. denied).

Second, the argument's premise is the puzzling statement that "the plaintiff is entitled to only one recovery, even when his injury could be said to result from multiple culpable acts" and "plaintiff may recover under his one best legal theory." (AptBr:36-37.)  It is not clear how those principles logically lead to a denial of attorney's fees, but, logic aside, the argument defies the following supreme court holding in *Swinnea I*:

> We need not distinguish here between ERI's causes of action – common law and statutory fraud, breach of contract, and breach of fiduciary duty – because ERI's lost profit damages are recoverable for any one of those claims.

*Swinnea I,* 318 S.W.3d at 876 n 3.

The decision in *Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.*, 747 S.W.2d 785, 787 (Tex. 1988), has nothing to do with this case. That case held:

> When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has the right to a judgment on the theory entitling him to the greatest of most favorable relief.

*Id.*

The attorney's fees are related to the lost profits recovery. Attorney's fees are recoverable for breach of contract. Swinnea's argument thus was foreclosed long ago by the trial court's original and the supreme court's holding – which is apparently the reason Swinnea has never challenged it until this latest attempt at review *de novo.*

### CONCLUSION AND PRAYER FOR RELIEF

This case is here only because of this court's *limited* remand to consider principles that undergird a disgorgement remedy. When an appellate court remands a case only as to a particular issue, the trial court is restricted to a determination of that particular issue. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). "Thus, in a subsequent appeal, instructions given to a trial court in the former appeal will be adhered to and enforced." *Id.* "By narrowing issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Id.*, at 629.

The purpose for the remand was clear: "As directed by the supreme court, we remand the case to the trial court for review of its forfeiture award in light of the principles discussed in the supreme court's opinion." *Swinnea II*, 364 S.W.3d at 425. No issues of standing, capacity or any other complaints, other than those relating to the disgorgement defined by the supreme court were available for review by the trial court.

This appeal has little to do with the trial court's ruling following this court's remand. Instead, it seeks de novo review of (i) the nature of the disgorgement remedy that was decided in *Swinnea 1,* (iii) this court's holdings in *Swinnea II* that did not trouble the supreme court, and (iii) issues that were plainly waived years ago – all in a context where the findings on remand are unchallenged.

Appellees, Larry Snodgrass and ERI ask that the prior judgment in this case be affirmed for all those reasons.

Respectfully submitted,

/s/ Deborah Race
Deborah Race
State Bar No. 16448700
IRELAND, CARROLL & KELLEY, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
drace@icklaw.com

Mike A. Hatchell
State Bar No. 09219000
LOCKE LORD, LLP
600 Congress Ave.
Austin, Texas 78701
Tel: (512) 305-4752
Fax: (512) 305-4800
mahatchell@lockelord.com

## CERTIFICATE OF COMPLIANCE

This brief complies with Texas Rule of Appellate Procedure 9.4(i) because it Contains 8073 words (excluding the parts of the brief exempted by this rule).

Signed this 6th day of August, 2015.

/s/ Deborah Race

35

**CERTIFICATE OF SERVICE**

I certify that on August 6, 2015, I served a copy of this motion electronically on the following:

Gregory D. Smith
Nolan Smith
Ramey & Flock, P.C.
100 E. Ferguson, Suite 500
Tyler, TX 75702

Michael E. Gazette
Law Office of Michael E. Gazette
100 E. Ferguson, Suite 1000
Tyler, TX 75702

/s/ Deborah Race